1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES E. WARD, individually, and on
behalf of all others similarly situated,

       Plaintiff,

  v.

UNITED AIRLINES, INC., and DOES 1
through 50, inclusive,

       Defendants.
_____/

No. C 15-02309 WHA

**ORDER CERTIFYING CLASS**

**INTRODUCTION**

    In this action relating to the formatting of wage statements, plaintiff seeks class
certification.  For the reasons stated below, plaintiff's motion is **GRANTED**.

**STATEMENT**

    At all relevant times, plaintiff Charles E. Ward worked as a pilot for defendant United
Airlines, Inc.  Ward resided (and continues to reside) in Marin County.  Ward worked primarily
as a reserve pilot, meaning he remained on call to fly segments as-needed, though on rare
occasions he also worked as a lineholder pilot, meaning United assigned him to a predetermined
flight schedule.  United determined its schedules for periods roughly equivalent to calendar
months, which it called "bid periods" (so called because pilots could bid for particular routes,
which United assigned according to seniority).  United considered Ward "domiciled" in San
Francisco, meaning his assignments in a given bid period began and ended at San Francisco
International Airport.

United States District Court

For the Northern District of California

1    Ward commenced this action in state court in San Francisco in April 2015, and United

2  removed this action to federal court pursuant to the diversity jurisdiction provision of the Class

3  Action Fairness Act.  Ward seeks to represent a putative class of 2,660 pilots that worked for

4  United in California from April 3, 2014, through the commencement of this action to assert

5  claims based on inaccuracies in the wage statements that United issued to its pilots.  This order

6  follows full briefing, supplemental briefing on issues relating to statutory preemption and the

7  dormant Commerce Clause, and oral argument.

8                                      **ANALYSIS**

9    Ward claims that United issued wage statements that omitted certain information

10  required by Section 226(a) of the California Labor Code, which provides, in pertinent part:

11           Every employer shall, semimonthly or at the time of each payment
             of wages, furnish each of his or her employees . . . an accurate
12           itemized statement in writing showing . . . (8) the name and
             address of the legal entity that is the employer . . . and (9) all
13           applicable hourly rates in effect during the pay period and the
             corresponding number of hours worked at each hourly rate by the
14           employee . . . .

15  Section 226(e)(1) provides that an employee suffering injury as a result of "knowing and

16  intentional failure by an employer" to comply with Section 226(a) is entitled to statutory

17  damages for each pay period in which a violation occurs as well as costs and attorney's fees.

18  Section 226(e)(2)(B) establishes that an employee is deemed to suffer an injury if the employer

19  "fails to provide accurate and complete information as required by [Section 226(a)] and the

20  employee cannot promptly and easily determine from the wage statement alone" the accurate

21  information, and Section 226(e)(2)(C) defines "promptly and easily" based on a reasonable

22  person's ability to ascertain the information in question.  Ward contends that United issued

23  wage statements that omitted its full legal name and address and that omitted the applicable

24  hourly rates and the hours worked at each rate to all of its pilots that resided in California and

25  seeks to certify a class of 2,660 pilots who worked for United to pursue those claims on a class-

26  wide scale.

27    Class certification is appropriate when a plaintiff can show that all of the prerequisites of

28  Rule 23(a) and at least one of the requirements of Rule 23(b) has been met.  *Abdullah v. United*

United States District Court

For the Northern District of California

*States Security Associates, Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).  Rule 23 considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Ward seeks certification under Rules 23(b)(2) and 23(b)(3).  Rule 23(b)(2) requires a plaintiff seeking class certification to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."  Rule 23(b)(3) requires the plaintiff to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The only requirement for class certification that United does not dispute is the numerosity requirement of Rule 23(a)(1).  Under Rule 23(a)(1), numerosity is satisfied by showing that "joinder of all members is impracticable."  This prerequisite is not tied to any fixed numerical threshold but is generally satisfied "when a class includes at least forty members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010).  Here, the proposed class of pilots who "were domiciled and/or resided in California" comprises 2,660 pilots. United applied California tax laws to the same number of pilots (Hanson Decl., Exh. D at 3–6). Ward has satisfied his burden to demonstrate numerosity.

United argues that Ward has failed to establish that common questions will predominate over individual questions, as required for certification under Rule 23(b)(3), or that declaratory or injunctive relief can be awarded as to the class as a whole, as required by Rule 23(b)(2). Specifically, United contends that the complexity of its compensation scheme for pilots precludes a finding of class-wide liability for Ward's claim based on the statement of hourly rates and wages.  It further contends that the applicability of the California Labor Code to the putative class members' wage statements can only be determined on a pilot-by-pilot basis. United also raises various issues relating to the typicality of Ward's claims and his adequacy as

3

**United States District Court**
For the Northern District of California

1  a representative of the putative class.  Finally, United proposes several alternative means for

2  adjudicating each of the pilots' respective claims that, so it argues, would be superior to class

3  adjudication.  Each argument is addressed in turn.

4       1.      **COMMON QUESTIONS.**

5       Ward has submitted numerous wage statements issued to several different members of

6  the putative class throughout the class period (Spars Dep., Exhs. 2, 3, 5, 6; Ward Decl., Exhs. 1,

7  3).  The wage statements followed a uniform format, and they can plainly serve as a common

8  form of proof of the presence or absence of United's full legal name and address and any

9  applicable hourly rates and hours worked on a class-wide basis.  As stated, Section 226(e)(2)

10  defines "injury" using an objective standard, namely, whether an employee can "promptly and

11  easily determine" the omitted information from the wage statement alone as measured by the

12  ability of a reasonable person's ability to ascertain the information in question.  That too can be

13  determined on a class-wide basis through examination of the wage statements in question.

14  United's knowledge and intent in omitting the information in question from its wage statements

15  can be determined on a class-wide basis through the testimony of its leadership.  Thus, Ward's

16  claims present numerous common questions capable of common answers, so Rule 23(a)(2),

17  which requires only a single significant question of law or fact common to the class, is satisfied.

18  *See Abdullah v. United States Security Associates, Inc.*, 731 F. 3d 952, 956 (9th Cir. 2013).

19       Nevertheless, United argues that individualized questions will predominate in the

20  adjudication of either of Ward's claims.  Specifically, it argues that the compensation structure

21  for pilots, set forth in a collective bargaining agreement, precludes the possibility that liability

22  based on United's failure to indicate the applicable hourly rates and hours worked at each rate

23  could be determined on a class-wide basis.  It also argues that individualized circumstances

24  dictate whether California law applies to each individual pilot's wage statements.  This order

25  also addresses issues involving statutory preemption and the dormant Commerce Clause.

26       **A.      Pilot Compensation.**

27       Pursuant to a collective bargaining agreement, United calculated the base pay owed to

28  each pilot for a given bid period based on the greater of three measures:  (i) line-pay value,

4

United States District Court

For the Northern District of California

(ii) minimum-pay guarantee, and (iii) protected-time credit (available only to lineholder pilots). The line-pay value was the primary component of a pilots' compensation and it comprised the pilot's time spent flying multiplied by the applicable hourly rate for the flight. Hourly rates varied based on a pilot's title, longevity, and the type of aircraft involved. Different hourly rates applied to activities such as training or flying as a passenger while on duty (*i.e.*, to start an assignment from a different city). The minimum-pay guarantee and the protected-time credit both ensured that pilots did not get penalized for accepting shorter flight segments (which yielded lower compensation) or for unavoidable circumstances such as flight cancellations. In other words, the latter measures were only triggered if a pilot's actual time worked during a bid period fell short of the amount expected based on the assignment for that period (White Decl., Exh. A §§ 3-C–D).

United paid pilots twice per calendar month, on the first and sixteenth days of each month (subject to adjustments for holidays). The amount of the first monthly paycheck that United issued to each pilot never related to the hours the pilot actually worked during that bid period. Instead, the first monthly checks that each pilot received was a proportion of the applicable minimum-pay guarantee for that month. (The proportion varied depending on each pilot's assignment for that bid period.) United called the first monthly paycheck the "Flight Advance." The amount of the second monthly paycheck was the balance of the pilot's total compensation for the bid period, calculated as the greater of the three measures of base pay discussed above plus certain bonuses (called "add pay") less the amount of the Flight Advance (White Decl. ¶¶ 3–5; Spars Decl. ¶¶ 2–3).

United issued wage statements concurrently with each paycheck. It issued paper statements to pilots that received live checks and electronic statements to pilots that received direct deposits. The format of the electronic statements mirrored that of the paper statements. United also provided a real time log of all paid activity recorded during a bid period called a "pay register," which pilots could access over the Internet. The wage statements never included any indication of the applicable hourly rates or the hours worked at that rate used in calculating the line-pay value, which Ward claims violated Section 226(a)(9). The pay registers also never

included any indication of the applicable hourly rates.  United argues that individual issues will predominate in adjudicating its liability for its failure to include the applicable hourly rates and hours worked at that rate on the wage statements for two reasons.

*First*, United argues that liability will vary depending on which measure of compensation applied to each paycheck.  That is, because the Flight Advance paychecks and any checks based on minimum-pay guarantee or protected-time credit did not relate to hourly rates or hours worked at all, its liability for failure to provide such information on all wage statements cannot be determined on a class-wide basis.  This is a straw man.  Ward does not seek a blanket determination of liability for failure to provide the hourly rates and hours worked information required by Section 226(a)(9) for *all* wage statements.  He seeks class-wide determination of United's liability *only* for the wage statements furnished in conjunction with payments based on the line-pay value.

*Second*, United argues that the applicable hourly rate for any given activity is calculated based on a complex multi-factor formula that considers numerous individualized circumstances such as a pilot's title and longevity as well as the nature of the activity.  That argument is irrelevant.  Ward's theory is not that United provided inaccurate statements of hourly rates or hours worked.  He claims that United failed to provide that information *at all*.  United's liability for that failure can be determined on a class-wide basis, and damages can easily be determined based on wage statements or United's payroll records.  The calculation of damages will be simple inasmuch as statutory damages are calculated on a per-violation basis.  Ward's claims will not rely on the various measures of base compensation or the various hourly rates, and common questions such as the format of the standard wage statement will predominate. Another predominant question, however, must now be addressed.

### B.    Applicability of California Law.

United also argues that a predominant issue, namely, whether California law applies to the challenged wage statements at all, will require individual inquiries into the proportion of time each member of the putative class worked in California.  United particularly notes that pilots who resided in California spent an aggregate of only eleven percent of their flight time in

United States District Court

For the Northern District of California

California, and those who were domiciled in California spent an aggregate of less than twenty percent of their time in California (Baker Decl. ¶¶ 8–18).

Generally, there is a presumption against the application of California law to occurrences outside the state "unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (citations omitted). There does not appear to be a clear expression or reasonable implication that the California legislature intended Section 226 of the California Labor Code to apply outside of the borders of California. Accordingly, United contends that California law cannot reach the wage statements issued to pilots whose work occurred primarily outside of California, even if the pilots in question resided in California or were domiciled there for route bidding purposes, so individualized inquiries into the precise amount of work each pilot performed in California will become necessary.

Not so. Ward's claims do not arise from the work he or members of the putative class performed outside California. Rather, they arise from the wage statements that United furnished to its pilots who resided *in* California. Ward's theory is that the location of the payment, not the location of the work, determines the applicable law for claims based on the format of wage statements.

United cites *Sarviss v. General Dynamics Information Technology*, 663 F. Supp. 2d 883, 899–900 (C.D. Cal. 2009) (Judge Dean D. Pregerson), for the position that pilots who worked primarily out of state cannot bring claims based on California labor laws. There, the plaintiff was a resident of California who trained helicopter pilots in Pakistan. The plaintiff spent only brief periods of time in California preparing supplies for the rest of his work, which occurred abroad. Judge Pregerson held that because the plaintiff did not "principally work[] in Califronia" he could not bring claims for overtime pay, or for premium wages for missed break breaks and rest breaks pursuant to the wage orders of the California Industrial Welfare Commission. Accordingly, Judge Pregerson granted summary judgment for the employer on those claims.

United States District Court

For the Northern District of California

1   That is not our case.  Here, Ward's alleged injuries and those of the entire putative class

2   occurred in California.  The wage statements at issue reflected out-of-state work, but United

3   furnished them to its employees in California nonetheless.  Accordingly, the part of *Sarviss* that

4   United relies on is inapposite.

5   The decision in *Sarviss* separately addressed a motion to certify a class based on

6   violations of Section 226 arising from an employer's failure to include its name and address in

7   wage statements.  Judge Pregerson did not certify the class because the plaintiff failed to

8   provide evidence that his employer used the same format for all wage statements across the

9   putative class.  Accordingly, the discussion of the plaintiff's Section 226 claims is merely

10  dictum.  Nevertheless, an implicit assumption in that discussion was that the wage statements

11  furnished to the plaintiff, a California resident, remained subject to Section 226, even though

12  the work the plaintiff performed was not subject to IWC wage orders.

13  No decision has directly addressed whether Section 226(a) applies to wage statements

14  issued to California residents that performed a majority of their work outside the state.  It is an

15  unsettled legal question clearly capable of class-wide resolution, and therefore, contrary to

16  United, it supports class certification.

17  Nevertheless, United may ultimately persuade the Court that California's wage-

18  statement laws should only apply when a pilot principally worked in California, as

19  contemplated by the discussion in *Sarviss* regarding breaks and overtime.  That determination

20  will likely involve individual inquiries into the percentage of time each pilot worked outside of

21  California, but the common questions discussed above will remain predominant.  If the

22  individual inquiries become unmanageable, the Court will consider decertifying the class.  That

23  remote possibility is insufficient to defeat class certification in the first instance.

24  **C.     Statutory Preemption and Dormant Commerce Clause.**

25  The Court might alternatively determine that federal law preempts application of Section

26  226(a) to interstate flights (via the Railway Labor Act or the Airline Deregulation Act) or that

27  such application would be unconstitutional in light of dormant Commerce Clause issues.

28  United only addressed statutory preemption in a footnote and a squib in its brief, and it made no

1    mention of the dormant Commerce Clause (Opp. at 13 n.4, 17).  Nevertheless, at oral argument,

2    counsel for United argued that class certification should be denied because "probing at the

3    merits" of Ward's claims reveals these threshold legal issues.  Indeed, the "'rigorous analysis'

4    [of Rule 23(a)] will entail some overlap with the merits of the plaintiff's underlying claim."

5    *Wal-mart Stores v. Dukes*, 564 U.S. 338 (2011).  That analysis, however, remains focused on

6    whether the Rule 23(a) requirements have been satisfied.

7         Both sides submitted post-hearing supplemental briefs on the issues of statutory

8    preemption and the dormant Commerce Clause.  In its supplemental brief, United asks that

9    Ward's class certification motion be held in abeyance so that it could file a motion for summary

10   judgment on his individual claims on statutory preemption and constitutional grounds.

11   Alternatively, United asks that the putative class be certified solely for the purpose of resolving

12   the preemption and constitutional issues pursuant to Rule 23(c)(4).  The procedures proposed by

13   United are unnecessary.  The merits issues it raises are purely legal questions that can be

14   resolved on a class-wide basis without any individualized inquiries.  The possibility that the

15   putative class may lose on preemption or constitutional grounds does not preclude certification

16   of the class.  "A common contention need not be one that will be answered, on the merits, in

17   favor of the class.  It only must be of such a nature that it is capable of classwide *resolution*."

18   *Alcantar v. Hobart Services*, 800 F.3d 1047, 1053 (9th Cir. 2015) (citations and quotation marks

19   omitted) (emphasis in original).

20        If United's statutory preemption or constitutional arguments prevail, a single ruling

21   could be applied class-wide.  If United's arguments fail, the common questions identified above

22   remain predominant and class certification remains appropriate.

23        In order to expeditiously resolve this threshold issue on a class-wide basis, United may

24   file an early motion for summary judgment drawn only to the statutory preemption and

25   constitutional issues without prejudice to a later motion on other issues.  Such motion shall not

26   be heard until after class notice has been disseminated and the deadline to opt-out has passed.

27   The motion may, however, be filed before that date.  The class notice should call out this

28   motion.

1          *                    *                    *

2          This order finds that common questions will predominate in the adjudication of both of

3    Ward's claims, as required by Rule 23(b)(3).  Similarly, since United's liability can be

4    determined for the class as a whole, Ward's entitlement to injunctive relief can also be

5    determined for the class as a whole, as required for certification under Rule 23(b)(2).

6          **2.     TYPICALITY.**

7          United argues that Ward "admitted that he has no knowledge whatsoever of Lineholder

8    Pilot compensation" and that he "does not even have standing to challenge the wage statements

9    of Lineholder Pilots" (Def.'s Opp. at 17).  Thus, United contends Ward's claims are not typical

10   of those of the lineholder pilots in the putative class.  United misrepresents Ward's testimony.

11   Ward has worked as both a reserve pilot and a lineholder pilot.  He admits that he could only

12   speculate as to particular differences between the compensation for lineholder pilots and reserve

13   pilots (the particular question is omitted from the record), but at no time did Ward indicate that

14   he entirely lacked knowledge about lineholder compensation, nor does his testimony indicate he

15   lacks standing as to lineholder pilots (Ward Dep. at 30).

16         In any case, the differences between compensation for lineholder pilots and reserve

17   pilots have no bearing on the presence or absence of United's legal name and address from

18   wage statements or the presence or absence of applicable hourly wages and hours worked.

19   Indeed, the primary, if only, differences between the compensation structures are that reserve

20   pilots receive a lower rate for the days on call in calculating their minimum-pay guarantees and

21   lineholder pilots may be compensated based on protected-time credits.  Neither of those facts

22   bears on Ward's claims.

23         Ward's claims arise from the format of the wage statements for checks paid based on

24   line-pay value, which format was common across all members of the putative class.  Thus, this

25   order finds that Ward's claims are typical of those of the putative class, within the meaning of

26   Rule 23(a)(3).

27

28

United States District Court

For the Northern District of California

3.     **ADEQUACY.**

The adequacy requirement of Rule 23(a)(4) requires "an absence of antagonism and a sharing of interests between" a plaintiff and the class he seeks to represent. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). United contends that Ward's interest in this litigation conflicts with the interests of the putative class because United could not practically comply with the requirements of Section 226 without altering the complex compensation structure for pilots for which the putative class members' union negotiated. Those interests do appear to be in tension, and indeed, as discussed above Ward's claims may ultimately be preempted by the Railway Labor Act or the Airline Deregulation Act or may be unconstitutional on dormant Commerce Clause grounds. Nevertheless, that issue can be decided on a class-wide basis, and, to the extent the claims herein are *not* preempted, Ward's interests in both maintaining the terms of the collective bargaining agreement and pursuing any rights established by Section 226 align with those of the putative class.

Ward failed to respond to United's argument concerning the tension between the collective bargaining agreement and the claims asserted herein. Nevertheless, that apparent conflict does not bear on Ward's adequacy as a class representative but rather on the merits of the case as a whole. This order holds that Ward is an adequate representative of the putative class.

Rule 23(g)(1)(A) provides that in appointing class counsel, the following factors must be considered:

> (i)  the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class . . . .

"[A]ny other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" may also be considered. Rule 23(g)(1)(B). Ward asks that his counsel, Jackson

1   Hanson LLP be appointed class counsel, with Attorney Kirk D. Hanson to serve as lead

2   counsel.

3          Attorney Hanson has extensive experience with class action litigation involving

4   California labor law, and he has achieved success for his clients.  His firm appears to have

5   adequate resources to manage a class action of this magnitude and has demonstrated diligence,

6   zeal, and knowledge of the applicable law in pursuing the claims herein (Hanson Decl. ¶¶ 2–6).

7   Indeed, Attorney Hanson was appointed class counsel in an action involving Section 226(a)

8   claims against a nationwide delivery company.  *See McKenzie v. Federal Express Corp.*, 275

9   F.R.D. 290, 302 (C.D. Cal. 2011) (Judge Gary Allen Feess).

10         This order holds that Ward has demonstrated that he and his counsel would be adequate

11  representatives as required by Rule 23(a)(4).

12      **4.      SUPERIORITY.**

13         Rule 23(b)(3) requires the consideration of four factors in assessing superiority:

14             (A) the class members' interests in individually controlling the
                prosecution or defense of separate actions;

15
                (B) the extent and nature of any litigation concerning the
16              controversy already begun by or against class members;

17             (C) the desirability or undesirability of concentrating the litigation
                of the claims in the particular forum; and
18
19             (D) the likely difficulties in managing a class action.

20  Here, Section 266(e) caps the amount of statutory damages available at four thousand dollars

21  per individual.  A single proceeding will be preferable and far more efficient than hundreds of

22  individual claims.  Given the magnitude of the class and the predominance of common

23  questions, it would be preferable to concentrate the litigation in a single forum, and the

24  management of this action will likely not be difficult.

25         United contends that there are alternative methods for individual pilots to pursue claims,

26  such as by pursuing a grievance under the collective bargaining agreement or by pursuing

27  streamlined individual claims before the California Division of Labor Standards Enforcement.

28  Given the predominance of common questions, a class action would be significantly more

United States District Court
For the Northern District of California

1  efficient than pursuing individual claims through United's proffered procedures.  This order

2  finds that the superiority requirement of Rule 23(b)(3) is met.

3        **5.    ASCERTAINABILITY.**

4        "In addition to the explicit requirements of Rule 23, an implied prerequisite to class

5  certification is that the class must be sufficiently definite; the party seeking certification must

6  demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA*

7  *Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  In order for a proposed class to satisfy this

8  requirement, membership must be determinable from objective, rather than subjective, criteria.

9  *Ibid.*; *see also Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696, at *4

10 (N.D. Cal. Feb. 13, 2014) (Judge Samuel Conti); *Wolph v. Acer America Corp.*, 272 F.R.D. 477,

11 482 (N.D. Cal. 2011) (Judge Jeffrey S. White).  Ward's proposed class definition includes all

12 pilots who "resided in" or "worked in" California.  Although United can likely determine which

13 pilots fit within that definition there is a clearer method for ascertaining the members of the

14 class.

15        Section 40116(f)(2) of Title 49 of the United States Code provides for the withholding

16 of state income taxes for airline pilots as follows:

17        The pay of an employee of an air carrier having regularly assigned
        duties on aircraft in at least 2 States is subject to the income tax
18        laws of only the following:

19        (A) the State or political subdivision of the State that is the
        residence of the employee.
20
        (B) the State or political subdivision of the State in which the
21        employee earns more than 50 percent of the pay received by the
        employee from the carrier.
22
23 Given the nationwide (and even global) nature of its business, United generally applies the state

24 income tax law of the state in which the employee resides (Paragraph A) because most pilots do

25 not earn more than fifty percent of their pay in any one state (as required to satisfy Paragraph

26 B).  To ensure that the class is entirely ascertainable from United's payroll records, the class

27 shall include only those pilots for whom United applied California's income tax laws.  To be

28 clear, this order does *not* hold that Section 226(a) automatically applies simply by virtue of the

application of California income tax laws.

13

**CONCLUSION**

For the reasons stated above, Ward's motion for class certification is **GRANTED**.  A class shall be certified pursuant to Rule 23(b)(2) and (3) as follows:

> All persons who are or were employed by United Airlines, Inc., as pilots for whom United applied California income tax laws pursuant to 49 U.S.C. 40116(f)(2) at any time from April 3, 2014, up to April 3, 2015.

Plaintiff Charles E. Ward is hereby **APPOINTED** class representative and his counsel, Jackson Hanson LLP, are hereby **APPOINTED** class counsel, with Attorney Kirk D. Hanson to serve as lead counsel.

By **APRIL 4**, counsel shall submit an agreed-on form of notice together with a plan and proposed order for the dissemination of notice and a timeline for opting out, with the plan to disseminate class notice by **APRIL 18**.  Plaintiff's counsel must pay for the cost of notice. Individual notice by regular mail plus newspaper notice is preferred by the Court.  In addition, all current employees should be notified by e-mail.  A website dedicated to the class should be established also providing notice.

As stated, United may file a motion for summary judgment on the threshold issues of statutory preemption and the dormant Commerce Clause without prejudice to a later motion on other issues.  The motion shall not be heard until class notice has been disseminated and the deadline to opt-out has passed.

**IT IS SO ORDERED.**

Dated:   March 23, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14