Kirk D. Hanson (CA SBN 167920)
Jeffrey C. Jackson (CA SBN 140990)
JACKSON HANSON, LLP
1050 Rosecrans Street, Suite H
San Diego, CA  92106
Tel:  (619) 523-9001
Fax:  (619) 523-9002

Attorneys for Plaintiffs Charles E. Ward,
Bruce Richards, the Aggrieved Employees,
and the Class Members

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. WARD and BRUCE RICHARDS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>UNITED AIRLINES INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: 3:15-cv-02309-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:       January 11, 2024<br>Time:       8:00 a.m.<br>Location: Courtroom 12, 19th Floor<br>                 Phillip Burton Federal Building<br>                 450 Golden Gate Ave.<br>                 San Francisco, CA 94102<br><br>Judge:     Hon. William Alsup |

## NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on January 11, 2024, at 8:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 12 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Charles E. Ward and Bruce Richards, together with Jackson Hanson LLP ("Class Counsel") will, and hereby do, move the Court for an Order:

1.     Awarding Attorney's Fees to Class Counsel in the amount of one-third of the Gross Settlement Value as it is valued at the time of distribution, which attorney fee amount is estimated to be **$3,423,354.67** at the time of distribution of the settlement money;

2.     Awarding Litigation Costs to Class Counsel in the amount of **$81,953.13**; and

3.     Awarding a Service Award to Plaintiff Charles E. Ward in the amount of **$20,000.00**, and awarding a Service Award to Plaintiff Bruce Richards in the amount of **$10,000.00**.

This Motion is made on the grounds that a fee award of one-third of the common fund created by the efforts of Class Counsel is reasonable and appropriate in this case in view of the exceptional results achieved (monetary and non-monetary), the risks presented by this litigation, including many issues of first impression before the Ninth Circuit Court of Appeal and the California Supreme Court, the complexity of the case, the skill required of Class Counsel and the quality of Class Counsel's work, the contingent nature of the fee, and the financial burden shouldered by Class Counsel.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities below, the Declarations of Class Counsel Kirk D. Hanson and Jeffrey C. Jackson, the Declarations of Plaintiffs Charles E. Ward and Bruce Richards, the Declaration of Chris Pikus of Rust Consulting, Inc., and the Declaration of Ethan S. Singer, Ph.D., all filed concurrently herewith, the [Proposed] Order filed concurrently

herewith, the oral argument of counsel, and on such additional matters and records as the Court may consider at the time of the hearing.

**Finally, Plaintiffs hereby seek leave of court to exceed the 25-page brief limit under the Local Rules of Court. Good cause exists for the Court to grant this request because the length and complexity of this case requires lengthy fact summaries and detailed legal analysis.**

Dated: October 24, 2023                      **JACKSON HANSON LLP**

/s/ *Kirk D. Hanson*
Kirk D. Hanson, Esq.
Attorneys for Plaintiffs, the Aggrieved Employees, and the Class Members

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   STATEMENT OF FACTS.....................................................................................3

    A.   The Initial Risks And Barriers In The District Court........................................3

    B.   The Risks And Barriers On Appeal....................................................................5

    C.   The Risks And Barriers In The District Court After Remand.............................7

III.  AN AWARD OF ATTORNEYS' FEES IN THE AMOUNT
     OF ONE-THIRD OF THE COMMON FUND CREATED
     BY THIS LITIGATION AND SETTLEMENT IS
     JUSTIFIED HERE................................................................................................9

    A.   The Common Fund Doctrine And The General
       Rules Applicable To Percentage Fee Awards....................................................9

    B.   Class Counsel Satisfy The Ninth Circuit's Standards
       For Fee Awards In Common Fund Cases.........................................................11

        (1)   The Results Achieved.............................................................................12

            a.   Substantial Benefits to the Class.................................................12

            b.   Benefits to Employees Statewide................................................17

        (2)   The Risks Of Litigation..........................................................................19

        (3)   The Complexity of the Case, the Skill Required,
            And the Quality of the Work Performed...............................................20

        (4)   The Contingent Nature of the Fee and Class Counsels' Burden.............21

        (5)   Awards in Similar Cases.........................................................................22

        (6)   A Lodestar Cross-check Confirms that the
            Requested Fee Is Reasonable.................................................................24

IV.   LITIGATION COSTS.........................................................................................26

V.    PLAINTIFFS' REQUESTED SERVICE AWARDS ARE JUSTIFIED.........................26

    A.   The Risk To The Class Representatives............................................................27

i

B.    **Negative Notoriety**............................................................................**28**

C.    **The Time And Effort Devoted To This Case By Plaintiffs**...................**28**

D.    **The Duration Of The Litigation**.........................................................**29**

E.    **The Service Awards Are Reasonable When Compared To
The Gross Settlement Amount**...........................................................**29**

VI.    **CONCLUSION**.........................................................................................**30**

PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE**</u>

**CASES**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)…..…………………………......................……9, 11

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)...........................................................16

*Carlin v. Dairy America, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. 2019)........................14, 15, 17, 20, 21

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43 (2008)...................................................................10

*Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550 (C.D. Cal. 2019)............................29

*Edwards v. Chartwell Staffing Services, Inc.*, 2018 WL 6174718 (C.D. Cal. 2018).......................10

*Farrell v. Bank of America Corp.*, 87 Fed.Appx. 628 (9th Cir. 2020)............................................24

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536 (C.D. Cal. 2017)..........................29

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...........................................................15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)........................................................................12, 18

*In re Activision Sec. Lit.*, 723 F.Supp.1373 (N.D. Cal. 1989).....................................................22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533 (N.D. Cal. 2016)..............12, 18

*In re Capacitors Antitrust Litig.*, 2018 WL 4790575 (N.D. Cal. 2018)....................................12, 18

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. 2005)......................11, 12, 14, 15, 18, 20

*In re Lidoderm Antitrust Litig.*, 2018 WL 4620695 (N.D. Cal. 2018)......................................14, 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).................................................10

*In re Omnivision Techs.*, 559 F.Supp.2d 1036 (N.D. Cal. 2007)....................................10, 11, 18

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)..............................11, 24

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995).................................................10,17

*In re Transpac. Passg'r Air Transp. Antitrust Litig.*, 2019 WL 6327363 (N.D. Cal. 2019).......12, 18

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291(9th Cir. 1994)............9, 20, 21

*Joh v. American Income Life Ins. Co.*, 2021 WL 66305 (N.D. Cal. 2021)....................................20

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009)......................................20, 21

*Laffitte v. Robert Half Int'l., Inc.*, 1 Cal.5th 480 (2016).............................................9, 10, 11, 24, 25

*Laguna v. Coverall North America Corp.*, 753 F.3d 918 (9th Cir. 2014)......................................10

iii

*Lefevre v. Five Star Quality Care, Inc.*, 2021 WL 2389884 (C.D. Cal. 2021)...................................12

*Mangold v. Calif. Public Utilities Comm'n.*, 67 F.3d 1470 (9th Cir. 1995).............................10

*Mills v. Auto Lite Co.*, 396 U.S. 375 (1970).....................................................................9, 17

*Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).............................10

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)................................................................11

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 349284 (E.D. Cal. 2007)..............................22

*Singer v. Becton Dickinson and Co.*, 2010 WL 2196104 (S.D. Cal. 2010).............................22

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)......................10

*Spann v. J.C. Penny Corp.*, 211 F.Supp.3d 1244 (C.D. Cal. 2016)...................................24

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).........................................................17

*Thompson v. County of Santa Clara*, 1990 WL 300239 (N.D. Cal. 1990).......................17

*Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474 (C.D. Cal. 2018)...................................27, 29

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...........................................*passim*

*Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020)........................................1, 6, 17, 19

*Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018)..............................................5, 18

*Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021).......................................1, 5, 6, 7, 18, 19

**STATUTES**

Labor Code §226………………………………………………………………....................................3, 4, 6, 17, 18

Labor Code §226(a)(2)………………………………………………………………......................2, 15, 19

Labor Code §226(a)(8)………………………………………………………………….........…………7, 19

Labor Code §226(a)(9)……………………………………………………………………....................2, 15, 19

Labor Code §226(e)…………………………………………….......................................…….......…….......…..2, 14

Wage Order No. 9...........................................................................................................5, 17

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

This case has been an intense battle from beginning to end. The Plaintiffs are two pilots represented by Jackson Hanson LLP, a small firm with only two attorneys. The Defendant, United Airlines, Inc., is a multi-billion-dollar company[1] represented by O'Melveny & Myers LLP, a large law firm with over 644 attorneys.[2] At every turn in this litigation United mounted a vigorous defense, and early on in the case United was successful in getting Plaintiffs' entire case thrown out on summary judgment. Yet, Plaintiffs and their attorneys never gave up. By way of successful appeals before the Ninth Circuit and California Supreme Court, Plaintiffs and their attorneys reversed summary judgment and reinstated Plaintiffs' and the Class Members' claims, and thereby created important precedential opinions clarifying the reach of California Labor Code section 226 (and other state labor laws) to interstate transportation workers. *See Ward v. United Airlines, Inc*., 9 Cal.5th 732 (2020); *Ward v. United Airlines, Inc*., 986 F.3d 1234 (9th Cir. 2021). Once back in the district Court after remand, Plaintiffs and their attorneys still had to prevail on the merits, and did so in the second round of cross-motions for summary judgment.

After eight years of hard-fought litigation, and Plaintiffs' success on appeal and in the district Court, Plaintiffs and their attorneys negotiated a settlement in the non-reversionary cash amount of **$10,100,000.00**. This is an exceptional result because:

1.    The **$10,100,000.00** non-reversionary common fund specified in the Settlement (which will increase to **$10,270,064.00** by the time of distribution due to accrued interest) provides the Class Members with recoveries that *exceed* the highest

---

[1] See *united.com/en/us/newsroom/announcements/cision-125269*.

[2] See *martindale.com/organization/omeleny-myers-llp-91530/*

possible recoveries they could obtain at trial.[3] (Hanson Decl. ISO Final Approval ¶¶ 17, 29). For example, the highest possible total gross recovery the Class Members could obtain at trial based upon the total number of defective paystubs they received during the Class Period is **$8,271,650.00**. (Hanson Decl. ISO Final Approval ¶ 29). By contrast, this Settlement provides the Class Members with a total gross recovery of **$10,135,364.00**, which is **$1,863,714.00** *more* than the highest possible recovery the Class Members could obtain at trial. (Hanson Decl. ISO Final Approval ¶ 29). Thus, the Settlement provides the Class Members with a gross recovery that is 122.5% of the maximum possible gross recovery at trial. (Hanson Decl. ISO Final Approval ¶ 29);

2.      Each Class Member will be paid a gross amount of **$119.49** for each wage statement they received during the Class Period, which amount far exceeds the **$100** limit set by Labor Code section 226(e). (Hanson Decl. ISO Final Approval ¶ 28). Moreover, even after all case costs are subtracted from the **$10,135,364.00** gross recovery, the net recovery per wage statement under this Settlement is **$77.21**, which is **77.21%** of the $100 maximum recovery. (Hanson Decl. ISO Final Approval, ¶ 31); and

3.      This Settlement and this lawsuit forced United to correct its violations of Labor Code section 226, subdivisions (a)(2) and (a)(9), by changing the format of its wage statements to show the number of hours worked by the pilots in the pay period and the corresponding effective hourly rates. This is arguably the most important win in this case because it will continue-on indefinitely and allow the pilots to quickly and easily verify the correct payment of their wages.

---

[3] The final gross settlement amount will be approximately **$10,270,064.00** by the time the money is disbursed because the **$10,100,000.00 GSV** was put into an interest-bearing account, as required by the Settlement. (Decl. of Chris Pikus ¶ 10). The requirement that the GSV be held in an interest-bearing account was included in the Settlement Agreement by Class Counsel. (Hanson Decl. ISO Final Approval ¶ 17).

PLAINTIFFS' MOTION FOR ATTORNEY'S FESS, COSTS, AND SERVICE AWARDS

For the reasons summarized above and discussed in detail below, the attorney's fees, litigation costs, and service awards requested by Plaintiffs and Class Counsel are well-justified here.

## II.   STATEMENT OF FACTS

Class Counsel and Plaintiffs had to overcome many obstacles, barriers, and challenges to achieve their ultimate success in this action, including years of protracted litigation and appeals involving many issues of first impression for the courts. The following facts document this difficult and risky journey. However, it should be noted that the various challenges described below are only brief summaries as each challenge involved multiple issues and sub-issues as briefed in great detail in Plaintiffs' briefs in the district court, the Ninth Circuit, and the California Supreme Court. (See also Case summary in Hanson Decl. ISO Final Approval/Attorney's Fees ¶¶ 8-15).

### A.   <u>The Initial Risks And Barriers In The District Court</u>
### <u>*Challenge No.* 1</u>

The first barrier Plaintiffs had to overcome was the contested class certification motion. The Labor Code section 226 claim at issue in this case involves three elements, and thus, Plaintiffs had to convince the Court that all three elements of the claim were appropriate for class certification under Rule 23. *See Class Cert. Order*, *Ward v. United Airlines, Inc.*, 2016 WL 1161504 (N.D. Cal. 03/23/2016).

United opposed class certification on various grounds, including arguments that: (1) "commonality" was not met because the Court would have to determine for each pilot whether Labor Code section 226 applied at all based upon the amount of time the pilot worked in California during the pay period; (2) "commonality" did not exist due to the complicated nature of the pilots' pay scheme set forth in the Collective Bargaining Agreement; (3) "adequacy" was not met with respect to Plaintiff Ward because he would only have standing as a plaintiff if he worked principally in California; (4) the

class definition should only include pilots for whom United applied California's income tax laws (thereby seriously reducing the size of the class); and (5) a class action is not the "superior" method for resolving the Labor Code section 226 claim where an administrative forum was also available. *Id.*

The Court rejected most of United's arguments, but for class certification purposes only, and certified the claims on March 23, 2016. *Id.* However, the Court did accept United's narrow class definition and limited the class to those pilots for whom United applied California's income tax law. *Id.* at *8. United's unsuccessful arguments were simply kicked down the road and repackaged by United in its motion for summary judgment, which arguments were summarized by the Court's class certification order as whether Section 226 applies to the challenged wage statements at all, based on whether California law can apply to employees who work primarily outside of California. *Id.* at *5.

### ***Challenge No. 2***

The next challenge for Plaintiffs was the Parties' first round of cross-motions for summary judgment. The motions raised complicated issues of federal preemption and the application of California state law to interstate transportation workers. United's motion made five complicated arguments: (1) Section 226 does not apply to Plaintiffs' claims because Plaintiffs and the class members performed the majority of their work outside of California, and thus, applying Section 226 to the class members' claims would violate the presumption against the extraterritorial application of California law; (2) application of Section 226 to Plaintiffs' claims violates the Dormant Commerce Clause; (3) Plaintiffs' claims are preempted by the Railway Labor Act; (4) Plaintiffs' claims are preempted by the Airline Deregulation Act; and (5) even if Section 226 applies, United complied with the requirements of Section 226. *Ward v. United Airlines, Inc.*, 2016 WL 3906077 (N.D. Cal. 07/19/2016).

The Court granted summary judgment in favor of United on all claims (and denied Plaintiffs' motion for summary judgment) based upon the "extraterritoriality" defense raised by United. *Id*. at *6. This was a total loss for Plaintiffs that could only be reversed on appeal. Thus, Plaintiffs timely appealed the ruling to the Ninth Circuit.

**B.    The Risks And Barriers On Appeal**

***Challenge No. 3***

Plaintiffs researched, prepared, and filed their briefs with the Ninth Circuit addressing all issues raised in the Parties' cross-motions for summary judgment and attended oral argument before the Ninth Circuit on March 16, 2018. *Ward v. United Airlines, Inc.*, 889 F.3d 1068, 1072 (9th Cir. 2018). At oral argument, *sua sponte*, the Ninth Circuit raised the issue as to whether Plaintiffs' claims were barred by the wage statement exemption for union employees set forth in Wage Order 9. The issue had not been raised or briefed by either party in the district court or in their appellate briefs. As such, Plaintiffs filed supplemental briefing with the Ninth Circuit on this issue. (Hanson Decl. ISO Final Approval/Attorney's Fees ₱ 10); *see also Ward*, 889 F.3d at 1072.

On May 9, 2018, the Ninth Circuit certified two questions for review by the California Supreme Court: (1) Does the exemption from Labor Code section 226 in Wage Order No. 9 for union employees bar Plaintiffs' claims?; and (2) Does application of Labor Code section 226 to United's pilots violate the presumption against the extraterritorial application of state law? *Ward*, 889 F.3d at 1070. The Ninth Circuit explained that there was no controlling California law answering these questions, and that the California Supreme Court's answers to these questions would not only determine the appeal in this case, but also resolve the broader extraterritoriality issues left open by the California Supreme Court's decisions in *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 (1996) and *Sullivan v. Oracle Corp*., 51 Cal.4th 1191 (2011). *See Ward*, 889 F.3d at 1072. In other words, the answers to these questions have an impact far beyond this case. *Id*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *Challenge No. 4*

The California Supreme Court accepted review, and the Parties filed briefs with the California Supreme Court and attended oral argument. (Hanson Decl. ISO Final Approval/Attorney's Fees ¶ 10). On June 29, 2020, in a detailed decision, the California Supreme Court answered both questions from the Ninth Circuit as follows: **(1)** The Railway Labor Act exemption in Wage Order 9 does not bar a Labor Code section 226 wage statement claim by an employee who is covered by a collective bargaining agreement; and **(2)** Section 226 applies to wage statements provided by an employer if the employee works a majority of the time in California or, for employees who are interstate transportation workers who do not work primarily in any one state, Section 226 applies if the worker has his or her base of work operations in California. *Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 760-761 (2020).

The California Supreme Court's decision in *Ward* was a total victory for Plaintiffs, and not only threw out United's "extraterritoriality" and Wage Order 9 defenses, but also expanded the class to include pilots who reside in other states if they are home-based in California for work purposes. *Id*. This part of the Court's decision drastically increased the number of class members and the reach of Section 226. Moreover, this decision guides all employers and employees as to the application of California's labor laws to interstate transportation workers. As such, Plaintiffs' win here goes far beyond this case.

### *Challenge No. 5*

The appeal then went back to the Ninth Circuit for resolution of the three (3) remaining appellate issues, to wit, the Dormant Commerce Clause preemption defense, the Airline Deregulation Act preemption defense, and the Railway Labor Act/collective bargaining agreement preemption defense. *See Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1239-1244 (9th Cir. 2021). The Parties filed supplemental briefing with the Ninth Circuit on these remaining issues and attended a second oral argument. (Hanson Decl.

ISO Final Approval/Attorney's Fees ‖ 11). On February 22, 2021, the Ninth Circuit issued its decision and *reversed* summary judgment in favor of United, thereby closing the door on the Dormant Commerce Clause defense, the Airline Deregulation Act defense, and the collective bargaining agreement/RLA defense. *Ward,* 986 F.3d at 1239-1244.

The Ninth Circuit also ordered that the class definition be modified to comply with the reach of Section 226 as augmented by the California Supreme Court's "*Ward* test." *Ward*, 986 F.3d at 1245. On this point, the Ninth Circuit states: "Under the *Ward* test, United's pilots and flight attendants are entitled to the protections of section 226 if their 'designated home-base airport' is in California and if they do not work more than half the time in another state." *Id*. The prior class definition limited the class to pilots who reside in California. The *Ward* test removed any California state residency requirement for class members, and thereby increased the size of the class. *Id*. Finally, the Ninth Circuit further ordered that the class definition for the pilots be modified so that the class period "will extend until the date that judgment is entered, rather than ending on the date that the complaint was filed." *Id*. at p. 1245. The district court in this case limited the end date of the class period to the date the complaint was filed, despite the fact that Plaintiffs requested a class period end date of the entry of the judgment. *Id*.

## C.   <u>The Risks And Barriers In The District Court After Remand</u>
### <u>*Challenge No.6*</u>

The Parties then filed a second round of cross-motions for summary judgment, and on August 7, 2022, this Court issued the following ruling: (1) the Court granted Plaintiffs' Motion on the issue of liability with respect to Labor Code section 226, subdivisions (a)(2) and (a)(9), finding that the pilots' paystubs failed to list the applicable hourly rates and the number of hours worked at each rate; and (2) the Court granted Defendant's Motion on the Labor Code section 226(a)(8) claim, finding that the listing of a post office box on the paystub satisfied the address requirement under that

subdivision. (Document 127). The Court also rejected Defendant's "multiple document" paystub theory. However, the Court accepted Defendant's "good faith" defense with respect to the class action paystub claim and held that Defendant's violations of Labor Code section 226 were only "knowing and intentional" as of February 2, 2021, when the Ninth Circuit remanded the case back to this Court. (Document 127). Thus, the Court's Summary Judgment Order changed the beginning date of the class period from **April 3, 2014** to **February 2, 2021**.

The second round of cross-motions for summary judgment was a complicated adjudication, and Plaintiffs had to overcome the following risky issues: (1) Plaintiffs had to defeat United's argument that its pilot wage statement could be comprised of "multiple documents" including the Pay Advice, the Pay Register, and the CBA; (2) Plaintiffs had to win on their argument that the Pay Advice was the "wage statement" for purposes of Section 226; (3) Plaintiffs had to prevail on all three elements of their Section 226 claim, that is, a violation of Section 226(a), injury from that violation, and that the violation was "knowing and intentional"; and (4) Plaintiffs had to defeat United's "good faith" defense raised by United to knock out the "knowing and intentional" element, which defense is currently at the center of a split of authority among the California Courts of Appeal and California's district courts.

Although Plaintiffs won on the majority of the issues raised in the second round of cross-motions for summary judgment, Plaintiffs lost on the Labor Code section 226(a)(8) claim (e.g., the paystub address requirement) and lost on the "good faith" defense issue. (Document 127). These losses illustrate the complex and risky nature of this case.

### _Challenge No. 7_

The final _contested_ litigation challenge for Plaintiffs was the mediation on September 13, 2022, and the months of negotiations that followed. After hard-fought negotiations, Plaintiffs ultimately settled this case for **$7,500,000.00**, which then

increased to **$10,100,000.00** after further negotiations to account for the dataset error that was uncovered after the mediation. This litigation also caused United to fix the format of its wage statements to comply with Labor Code section 226.

It is impossible in this brief for Plaintiffs to fully describe the numerous and complex issues they had to overcome to win this case. That would take more than a hundred pages to do. The briefs filed by Plaintiffs in this Court, the Ninth Circuit, and the California Supreme Court speak for themselves and illustrate the numerous complex issues that Plaintiffs had to analyze and overcome.

### III.   AN AWARD OF ATTORNEYS' FEES IN THE AMOUNT OF ONE-THIRD OF THE COMMON FUND CREATED BY THIS LITIGATION AND SETTLEMENT IS JUSTIFIED HERE

Class Counsel request a fee award of one-third of the common fund created by this Settlement. The common fund here will be **$10,270,064.00** by the time the money is distributed. Thus, one-third of that amount is **$3,423,354.67**. This award is justified both legally and factually, as explained below.

### A.   The Common Fund Doctrine And The General Rules Applicable To Percentage Fee Awards

The United States Supreme Court instructs that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). The purpose of the common fund doctrine is to avoid unjust enrichment, as "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see* also *Laffitte v. Robert Half Int'l., Inc.*, 1 Cal.5th

480, 489-90 (2016).

The percentage-of-recovery method is most appropriate where, as here, the settlement creates a true common fund in a specific dollar amount. *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The percentage method is the dominant method for calculating fees in cases like this one, where through Class Counsels' efforts, a non-reversionary cash fund was created in a fixed amount for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Importantly, as here, where the claims arise under California law, California law governs the calculation and award of attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Calif. Public Utilities Comm'n.*, 67 F.3d 1470, 1478 (9th Cir. 1995). California uses the common fund doctrine for the award of attorneys' fees in class action cases like this one where the litigation creates a specific monetary fund for the benefit of the class. *Laffitte, supra,* 1 Cal.5th 480.

Although the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted (*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)), there is no such benchmark under California law. Indeed, in appropriate cases, state and federal courts applying the percentage-of-recovery method routinely award one-third of the common fund. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) (noting that studies show California fee awards in common fund cases generally average around one-third); *Laffitte*, 1 Cal.5th at 486-88 (affirming one-third fee); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (same); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) (same); *Edwards v. Chartwell Staffing Services, Inc.*, 2018 WL 10455206 at *6 (C.D. Cal. 2018).

The Settlement Agreement here contemplates that the fee award for Class Counsel be calculated as a percentage of the total settlement amount (e.g., the "Gross

Settlement Value" or "GSV"), not the net settlement amount (e.g., "Net Settlement Value" or "NSV"). (See Settlement ⁋ 18, Document 130-1; Addendum ⁋ 18, Document 154). This is consistent with both California and federal law under which fees are awarded as a percentage of the *gross settlement recovery* because it spreads the fees "proportionally among those benefited by the suit," "in the exact proportion that the value of [each class member's] claim bears to the total recovery." *Boeing* at 479-480; *see Laffitte* at 506; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

As explained below, the requested fee is also justified under the Ninth Circuit's standards set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

## B.   Class Counsel Satisfy The Ninth Circuit's Standards For Fee Awards In Common Fund Cases

The Ninth Circuit has established the following factors for courts to consider when evaluating fee requests in common fund cases: **(1)** the results achieved and the benefits to the class; **(2)** the risks of litigation; **(3)** the skill required and the quality of the work; **(4)** the contingent nature of the fee and the burden carried by class counsel; **(5)** awards in similar cases; and **(6)** the lodestar cross-check.[4] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002); *In re Heritage Bond Litig.*, 2005 WL 1594389 at *8 (C.D. Cal. 2005); *In re Omnivision Technologies*, 559 F.Supp.2d 1036, 1046-48 (N.D. Cal. 2008).

Importantly, the first *Vizcaino* factor (the results achieved and the benefits to the class) is the most important factor in the determination of a fee award. *In re Omnivision Technologies*, 559 F.Supp.2d at 1046 ("The overall result and benefit to the class from

---

[4] The lodestar cross-check is the only factor out of the six factors that is *not required* by the Ninth Circuit for a fee award. *Farrell v. Bank of America Corp.*, 87 Fed.Appx. 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015); *Spann v. J.C. Penny Corp.*, 211 F.Supp.3d 1244, 1264-65 (C.D. Cal. 2016).

the litigation is the most critical factor in granting a fee award"); *In re Transpacific Passenger Air Transp. Antitrust Litig*., 2019 WL 6327363 at *2 (N.D. Cal. 2019) ("The most important of these factors is the resulting benefit obtained for the class"); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("The most critical factor is the degree of success obtained"); *In re Heritage Bond Litig*., 2005 WL 1594389 at *8 (same); *In re Capacitors Antitrust Litig*., 2018 WL 4790575 at *3 (N.D. Cal. 2018) (same); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2016 WL 4126533 at *4 (N.D. Cal. 2016) (same).

An example of how courts apply the *Vizcaino* factors in wage and hour class actions is seen in *Lefevre v. Five Star Quality Care, Inc.*, 2021 WL 2389884 (C.D. Cal. 2021), wherein class counsel sought a fee award of one-third of the gross settlement amount. The district court evaluated the *Vizcaino* factors and determined that four of the factors weighed *against* departing from the 25% attorney fee benchmark and only two factors weighed in favor of an upward departure from 25%. *Id*. at **3-5. Nevertheless, even though class counsel satisfied only two of the *Vizcaino* factors, the court increased the 25% benchmark by 2% and awarded fees of 27%. *Id*. at *5. The court raised the fee award above the benchmark by 2%, despite the fact that it determined class counsel failed to satisfy the most important *Vizcaino* factor, e.g., factor one---the results achieved. *Id*. at * 3 ("Plaintiffs' Counsel have provided no evidence that it obtained an especially exemplary result.").

As explained below, and unlike class counsel in *Lefevre*, Class Counsel here satisfy and exceed *all* of the *Vizcaino* factors. And, most importantly, Class Counsel achieved an exceptional result here on *Vizcaino* factor one---the results achieved.

### (1)    The Results Achieved

#### a.    *Substantial Benefits to the Class*

In this case, Class Counsel achieved exceptional monetary and non-monetary results for the class that justify the one-third fee request. Class Counsel achieved a

fantastic monetary result for the Class: a non-reversionary **$10,100,000.00** cash settlement fund in a Labor Code section 226 paystub only case (there is no unpaid wage claim alleged or released), which fund will increase to **$10,270,064.00** by the time of distribution as a result of Class Counsel requiring that the fund be held in an interest-bearing account. (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 17).

First, a comparison between the gross value of this Settlement and the gross *possible* recovery the Class Members *could* obtain at trial illustrates the fantastic result achieved here under the Settlement. For example, the maximum possible gross recovery the Class could obtain at trial is based solely upon the 84,820 defective paystubs the Class Members received during the Class Period. The damage calculation is based upon the statutory formula set forth in Labor Code section 226(e), that is, $50 for the first defective paystub received by each of the 4,207 Class Members (e.g., $50 x 4,207 paystubs = $210,350.00), plus $100 for each of the 80,613 subsequent paystubs received by the Class Members (e.g., $100 x 80,613 subsequent paystubs = $8,061,300.00). Thus, the highest possible gross recovery the Class Members could obtain at trial is **$8,271,650.00** (e.g., $210,350.00 + $8,061,300.00). By contrast, the Settlement provides a total gross recovery to the Class Members of **$10,135,364.00**, which is **$1,863,714.00** *more* than the highest possible recovery the Class Members could obtain at trial. Thus, the Settlement provides the Class Members with a gross recovery that is 122.5% of the maximum possible gross recovery at trial. (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 29).

This is a fantastic result that justifies the one-third fee request because it far exceeds the typical percentages of recovery seen in other wage and hour class action settlements, which recoveries are typically in the range of 10% to 27% of the maximum potential recovery at trial. *See Ayala v. UPS Supply Chain Sols., Inc.*, No. EDCV 20-117 PSG (AFMx), 2021 WL 4497881, at *8 (C.D. Cal. Aug. 24, 2021) (approving settlement that was slightly less than **10%** of the maximum possible recovery at trial); *Martinez v. Helzberg's Diamond Shops*, No. EDCV 20-1085 PSG (SHKx), 2021 WL 4730914, at *8

(C.D. Cal. Apr. 12, 2021) (approving settlement that was only **11%** of the expected recovery at trial); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement that constituted approximately **25%** of the possible recovery at trial); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving a Labor Code section 226 wage statement settlement that was approximately **27%** of the expected recovery at trial).

Second, when awarding fees, courts routinely rely on the estimated *individual gross recovery* per class member, rather than the *individual net recovery*, because the true value of a settlement is the gross amount of the individual recovery. *See Carlin v. Dairy America, Inc.*, 380 F.Supp.3d 998, 1020-21 (E.D. Cal. 2019); *In re Lidoderm Antitrust Litig*., 2018 WL 4620695 at *2 (N.D. Cal. 2018); *see also Heritage Bond*, 2005 WL 1594403 at *19 (considering both). The Settlement in this case provides excellent individual gross recoveries.

The gross individual recovery each Class Member will receive under this Settlement is based upon the number of wage statements the Class Member received during the Class Period. (Addendum ¶ 22). Likewise, if this case proceeded to trial, the gross individual Class Member recovery would also be determined by the number of wage statements the Class Member received during the Class Period. *See, e.g., Lab. C*. § 226(e) ($50 for the first paystub and $100 for all subsequent paystubs, with a $4,000 limit). Thus, the most relevant metric for the monetary evaluation of this Settlement is the gross amount the Class Member will receive for each individual wage statement.

After subtracting the $134,700.00 PAGA payment from the **$10,270,064.00** Gross Settlement Value, the gross amount remaining for the Class Members is **$10,135,364.00**. This amounts to a *gross value per wage statement* of **$119.49** (e.g., $10,135,364.00 ÷ 84,820 total Class Member paystubs = $119.49), which is **$19.49**

more per paystub than each Class Member could recover at trial under the $100 cap set by Labor Code section 226(e). (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 28). This is an exceptional result that justifies the one-third fee request.

Third, the *net recoveries* under this Settlement (after deductions for attorneys' fees, litigation costs, service awards, and settlement administration costs) are also exceptional and justify the one-third fee request. After the deductions from the $10,270,064.00 GSV for attorney's fees ($3,423,354.67), litigation costs ($81,953.00), service awards ($30,000.00), settlement administration fees ($50,876.70), and the PAGA payment ($134,700.00), the Net Settlement Value of **$6,549,179.50** remains for the payments to the Class Members. This amounts to a net recovery of **$77.21** per paystub (e.g., $6,549,179.50 NSV ÷ 84,820 paystubs = $77.21). This is a *net* recovery per paystub that is **77.21%** of the $100 maximum recovery per paystub set by Labor Code section 226(e). (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 31). This is a *fantastic* result and justifies the one-third fee request here because, even after all litigation costs have been subtracted, the *net recovery* under this Settlement far exceeds the typical range for net recoveries in wage and hour class action settlements. *See, e.g., Carlin, supra,* 380 F.Supp.3d at 1020-21 (recovery of estimated *net damages* in the range of 31% to 51% "weighs in favor of a higher-than-benchmark award of fees"; awarding 33% of the common fund); *Lidoderm,* 2018 WL 4620695 at *2 (recovery of 29% of the estimated *net* damages justified a one-third fee award); *In re Heritage Bond Litig.,* 2005 WL 1594403, at *19 (C.D. Cal. 2005) (recovery of 23% of the estimated *net* damages was an "exceptional result" justifying a one-third fee award).

Finally, in addition to the excellent monetary value of the Settlement, Class Counsels' work on this case "generated benefits beyond the cash settlement fund." *Vizcaino,* 290 F.3d at 1049. This litigation forced United to change the format of the wage statements so that they comply with Labor Code section 226, subdivisions (a)(2) and

(a)(9). As a result of these changes, the wage statements now show the total hours worked in the pay period and the applicable effective hourly rate for each hour worked. This change now allows the Class Members (and all future pilots home-based in California) to quickly and easily determine the accuracy of their pay. This is arguably the most significant and exceptional result in this case.

Although the dollar value of remedial measures and injunctive relief can sometimes be hard to quantify, if it can be quantified (even in general terms) it should be done so that the court includes the dollar value of the injunctive relief in the total amount of the settlement when determining the actual fee percentage in relation to the total settlement amount. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029-30 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (settlement had no cash component, but parties valued the injunctive relief at $115 million; fee award of 5.2 million, which amounted to 4.5% of the estimated $115 million common fund).

Here, the value of United's remedial measures can be quantified using the values in Labor Code section 226. The statute puts a value of $50 for the first non-compliant paystub and a value of $100 for each subsequent non-compliant paystub (and caps penalties at $4,000). *See* Lab. C. § 226(e)(1). It stands to reason that these values also apply to compliant paystubs because, for damages purposes, the Legislature has put a compensatory value on paystubs in the amounts of $50 and $100. Thus, using Labor Code section 226(e) as the value metric, the current value of the remedial measures for United's California-based pilots can be calculated at **$8,271,650.00** (e.g., 4,207 pilots home-based in CA x $50 for the first paystub = **$210,350.00**, plus 80,613 subsequent paystubs x $100 = **$8,061,300.00**). (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 32). Of course, this value can be applied forward indefinitely. When determining the *actual percentage* of

Class Counsel's fee request, the Court should include the estimated dollar value of the remedial measures. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Vizcaino*, 290 F.3d at 1049.

### b.       Benefits to Employees Statewide

Where class counsels' work on a case creates published appellate opinions benefitting California's employers and employees statewide, this is an extraordinary non-monetary benefit that the court considers in determining the fee to be awarded to class counsel. *Vizcaino*, 290 F.3d at 1049; *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Carlin, supra,* 380 F.Supp.3d at 1020 (the fact that class counsel "successfully argued for reinstatement of their claims at the Ninth Circuit" justified higher-than-benchmark fee award of 33%); *Thompson v. County of Santa Clara*, 1990 WL 300239, *2 (N.D. Cal. 1990) (class counsel's work may be considered an "exceptional success" when "a new legal precedent [is] established").

In this case, Class Counsel reinstated Plaintiffs' claims (and the Class claims) before both the California Supreme Court and the Ninth Circuit, thereby creating binding published precedent on important issues, including the reach of California's labor laws to workers who travel in and out of California. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). Indeed, when the Ninth Circuit certified two of the appellate issues to the California Supreme Court for decision, to wit, (1) the reach of Labor Code section 226 to

interstate transportation workers and (2) whether Wage Order No. 9 exempts union employers from compliance with Section 226, the Court noted the great importance of these issues beyond this case, stating:

> "The answers to the certified questions would not only determine the outcome of the summary judgment motions in these cases but also resolve extraterritoriality issues that *Tidewater* and *Sullivan* left open. ***The certified questions matter greatly to the many California residents who work only episodically in California and to the many employers who regularly send California residents to work outside of the state***."

*Ward*, 889 F.3d at 1072, emph. added. The Ninth Circuit also recognized that the decision from the California Supreme Court created the "*Ward* test" for the determination of whether Labor Code section 226 applies to interstate transportation workers in a particular case. *Ward*, 986 F.3d at 1245.

Class Counsels' success in reversing summary judgment on appeal before both the California Supreme Court and the Ninth Circuit, and the important legal precedent created in doing so, is an additional significant justification for the one-third fee requested here.

In summary, *Vizcaino* factor number one ("the results achieved") is exceptionally satisfied here on many levels. Again, out of all the *Vizcaino* factors, factor one has the most weight and is the most critical factor when the Court makes its determination of a fee award. *See In re Omnivision Technologies*, 559 F.Supp.2d at 1046; *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2019 WL 6327363 at *2 (N.D. Cal. 2019); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *In re Heritage Bond Litig.*, 2005 WL 1594389 at *8; *In re Capacitors Antitrust Litig.*, 2018 WL 4790575 at *3 (N.D. Cal. 2018); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533 at *4 (N.D. Cal. 2016).

Plaintiffs submit that the exceptional showing here on *Vizcaino* factor number one justifies the one-third fee request by itself.

### (2)   The Risks Of Litigation

This case was extremely risky from the start, and in fact, shortly after class certification (a risk itself) Plaintiff Ward lost this case on various grounds when the Court ruled on the first round of cross-motions for summary judgment. The risks continued on appeal where the Ninth Circuit and California Supreme Court ruled on five (5) separate issues of first impression concerning the application of Labor Code section 226 to unionized interstate transportation workers. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). Finally, the risks continued on remand back to the district court in the second round of cross-motions for summary judgment on the merits. Although Defendant's various preemption defenses were rejected on appeal, Defendant raised various defenses on the merits to the entire case in the second round of cross-motions for summary judgment. And, Defendant was successful in defeating Plaintiffs' Labor Code section 226(a)(8) claim (the P.O. Box vs. physical address claim) and was successful in drastically shortening the Class Period (which drastically reduced the damages) by  asserting the "good faith" defense to the Labor Code section 226, subdivisions (a)(2) and  (a)(9) claims. In short, this is the riskiest and longest running case that Class Counsel have ever litigated. (Hanson Decl. ISO Final Approval/Attorneys' Fees ⁋ 53).

It must be pointed out that if Plaintiffs had lost on any *one* of the five (5) issues raised on appeal, the case would have been over. Likewise, if Plaintiffs had lost on any *one* of the merits defenses raised by Defendant on the second round of cross-motions for summary judgment, the case would have been over. The length of this case (8 years) makes this case especially risky for Class Counsel because the longer the case runs, the more hours and costs are incurred by Class Counsel on a contingency basis. If Class Counsel had lost this contingency case after these many years of litigation, the financial loss would have been devastating, and far greater than a loss on a contingency case

litigated for only a short period of time (e.g., 1-2 years). (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 53).

Finally, this high-risk work was performed by Class Counsel in the face of a large and well-funded formidable adversary, that is represented by a very large law firm. As the docket in this Court, in the Ninth Circuit, and in the California Supreme Court shows, United put up a vigorous defense at every stage in the litigation. By contrast, Class Counsels' firm is a small firm with only two attorneys, and yet, rose to the challenge. (Hanson Decl. ISO Final Approval/Mtn. Attorney's Fees ¶ 56).

This hard-fought and risky litigation justifies the requested one-third fee. *See In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 n. 10 (9ᵗʰ Cir. 1994) ("The stronger the defense, the higher the risk involved...and the greater the [fee] necessary to compensate plaintiff's attorney for bringing the action."); *Carlin*, 380 F.Supp.3d at 1020 (overcoming "vigorous opposition" of "exceptionally skilled [defense] counsel" warranted above-benchmark fee of 33%); *Vizcaino*, 290 F.3d at 1048.

### (3)   The Complexity of the Case, the Skill Required, and the Quality of the Work Performed

The successful prosecution of a complex class action case requires unique skills and abilities. *Carlin*, 380 F.Supp.3d at 1021; *Joh v. American Income Life Ins. Co.*, 2021 WL 66305, at *7 (N.D. Cal. 2021) (citing *Omnivision*, 559 F.Supp.2d at 1047). "[T]he quality of Class Counsel's effort, experience and skill is demonstrated in the exceptional result achieved." *In re Heritage Bond Litig.*, 2005 WL 1594403 at *19.

The complexity of this case is set forth in detail above in Section II, and is also evident from the record in the district Court, the Ninth Circuit, and the California Supreme Court. The detail in the decisions from these courts speak to the complexity of

the issues raised in this case, including the detailed and complex analysis in this Court's class certification and summary judgment orders. Moreover, the fact that this case has been litigated for over eight years also illustrates the complexity of this case.

The nature of this case (e.g., complicated issues of first impression) and the results achieved (e.g., winning on nearly every issue, obtaining **$10,270,064.00**, and forcing United to cure the defects in its paystubs) required a high level of skill and a very high quality of work. Luck had nothing to do with it. Indeed, the record here and the results achieved speak for themselves and attest to the skill and high level of work performed by Class Counsel. (Hanson Decl. ISO Final Approval/Mtn. Attorney's Fees ⁋ 54). These exceptional results justify the one-third fee request here.

**(4)    The Contingent Nature of the Fee and Class Counsels' Burden**

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at * 6 (N.D. Cal. 2009), citing *Vizcaino*, 290 F.3d at 1050. Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium ... for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis ..." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299-1300; *see also Knight* at *6, citing *Vizcaino*, 290 F.3d at 1050. A higher-than-benchmark award exists to reward counsel for investing substantial time, effort, and money, where there is a substantial risk of recovering nothing. *Carlin*, 380 F.Supp.3d at 1021.

Class Counsel have been working on this case on a contingent-fee basis since January of 2015, and have advanced all the litigation costs associated with the prosecution of this case, which costs are **$81,953.13**. (Jackson Decl. ISO Final Approval ⁋ 7; Hanson

Decl. ISO Final Approval/Mtn. Attorney's Fees ₱₱ 55, 56). Jackson Hanson LLP is a small firm and does not employ any associates or paralegals. Accordingly, Class Counsel took a significant risk in prosecuting this case on a contingency basis, and have done extensive work on this case since January of 2015 without receiving any compensation or cost reimbursement. (Hanson Decl. ISO Final Approval/Mtn. Attorney's Fees ₱₱ 55, 56, 58, 59). Moreover, because of the significant time commitment required by this case over these many years and the small size of Class Counsels' firm (e.g., two attorneys), working on this case necessarily prevented Class Counsel from taking on hourly cases and other contingency cases with less risk and shorter durations for recovery. (Hanson Decl. ISO Final Approval/Mtn. Attorney's Fees ₱₱ 55, 56).

Class Counsels' substantial outlay of attorney time and expenses in the prosecution of this case, when there was a substantial risk that none of it would be recovered, supports the award of the requested one-third fee here. *Knight*, *supra*, 2009 WL 248367, at *6.

### (5)   Awards in Similar Cases

Most common fund fee awards in the Ninth Circuit average around one-third of the total recovery. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. 2009); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 349284, at *4 (E.D. Cal. 2007); *In re Activision Sec. Lit.*, 723 F.Supp.1373, 1377-78 (N.D. Cal. 1989); *Singer v. Becton Dickinson and Co*., 2010 WL 2196104, at *8 (S.D. Cal. 2010). As such, the one-third fee requested here is within the normal range for class action cases in the Ninth Circuit.

Moreover, the one-third fee requested here is also within the range of fee awards in other Labor Code section 226 wage statement cases *that Class Counsel have personally handled*. These cases include, but are not limited to: *Banda v. Verizon California, Inc.*, Los Angeles County Superior Court Case No. BC 434587 (**35% fee awarded** on $15,000,000.00 settlement of PAGA/class action Labor Code section 226 claim; *Padilla*

*v. Staffmark Investment, LLC*, San Bernardino County Superior Court Case No. CIVDS1408641 (**33.33% fee awarded** on $2,000,000.00 settlement of PAGA only Labor Code section 226 claim; *Michael Merchant v. OfficeTeam*, Los Angeles County Superior Court Case No. BC 461652 (**33.33% fee awarded** on $1,500,000.00 settlement of PAGA/class action Labor Code section 226 claim; *Bengel v. Career Strategies Temporary, Inc.*, Los Angeles County Superior Court Case NO. BC 565227 (**33.33% fee awarded** on $750,000.00 settlement of PAGA/class action Labor Code section 226 claim; *Amber Garcia v. Macy's West Stores, Inc.*, San Bernardino County Superior Court Case. No. CIVDS1516007 (**33.33% fee awarded** on a $12,500,000.00 settlement of a PAGA only Labor Code section 226 claim); and *Vidrio v. United Airlines, Inc*., U. S. District Court, Central District of California, Case No. CV 15-7985 PSG (MRWx) (June 29, 2023) Document 114 (**33.33% fee awarded** on a $54,408,649.00 common fund settlement of a PAGA/class action Labor Code section 226 claim). (Hanson Decl. ISO Final Approval/Attorney's Fees ⁋ 57).

Finally, this case generated landmark California Supreme Court precedent that created the "*Ward* test" for the determination of when California's labor laws apply to workers who travel in and out of California when performing their work. *See Ward*, *supra*, 9 Cal.5th 733; *see also Ward*, *supra*, 986 F.3d at 1245 (describing the "*Ward* test" developed by the California Supreme Court). In other wage and hour cases generating comparable California Supreme Court precedent, class counsel were awarded one-third of the common fund. *See e.g., Augustus v. American Comm. Sec. Servs*., 2017 WL 11417614 (Cal. Super. July 6, 2017) (awarding one-third fee to counsel responsible for *Augustus Security Servs., Inc*., 2 Cal.5th 257 (2016); *Hohnbaum v. Brinker Rest. Corp*., San Diego Super. Ct., no CIG834348, Order filed 12/12/2014) (awarding 41.8 % in fees to counsel whose work "resulted in a landmark Supreme Court case, *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012)"; *see also Rodriguez*, 2022 WL 254349 at *6 (awarding a one-third fee to

counsel who obtained a reversal of a defense judgment by way of a successful appeal to the Ninth Circuit, which appeal generated the published wage and hour precedent of *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810 (9th Cir. 2019)).

### (6)    A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable

Unlike the other *Vizcaino* factors, a district court is not required to conduct a lodestar cross-check to assess the reasonableness of a fee award. *See Farrell v. Bank of America Corp*., 87 Fed.Appx. 628, 630 (9th Cir. 2020); *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 955 (9th Cir. 2015); *Spann v. J.C. Penny Corp*., 211 F.Supp.3d 1244, 1264-65 (C.D. Cal. 2016). However, a district court *may* perform such a check in order to confirm "the reasonableness of a fee award." *Vizcaino*, 290 F.3d at 1050. In short, when performing a lodestar cross-check, the district court is looking to see if the percentage fee request will result in an unfair reduction of the amount payable to the class members. *Id.*

When applying a lodestar cross-check to the percentage fee request, courts do not closely scrutinize the attorney's hours like it would on a lodestar-multiplier fee request. On this point, *Laffitte* states:

> "With regard to expenditure of judicial resources, **we note that trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize each claimed attorney-hour**, but have instead used information on attorney time spent to 'focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.' (5 Newberg on Class Actions, *supra*, sec. 15:86, p. 331; see, e.g., *Goldberger v. Integrated Resources, Inc., supra*, 209 F.3d at p. 50 [2d Cir; **'where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court'**]; *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 342 [**agreeing with district court that 'detailed time summaries were unnecessary where, as here, it was merely using the lodestar calculation to double check its fee award.'**]; *Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. 2013) 297 F.R.D. 431, 451 ['**Where the lodestar method is used as a**

**cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.'**].).''

*Id.* at p. 505, emph. added. As succinctly noted in *In re Rite Aid Corp. Sec. Litig.* (3d Cir. 2005) 396 F.3d 294, 306: "**The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting**."

In *Vizcaino v. Microsoft Corp.*, *supra*, 290 F.3d 1043, the court explains the nature of the lodestar cross-check: "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* at p. 1050. Put another way, the California Supreme Court in *Laffitte* advises that the lodestar cross-check "does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the potential fee award." *Laffitte* at p. 505.

Here, Class Counsels' unadorned lodestar is **$1,574,633.50** (e.g., 1,684.1 hours x $935/hour = $1,574,633.50). Thus, the one-third fee request here of $3,423,354.67 amounts to a multiplier of **2.17**. (Hanson Decl. ISO Final Approval/Attorney's Fees ¶ 59).

Multipliers in common fund cases in the Ninth Circuit are routinely awarded in the range of 1.0 to 4.0. *Vizcaino,* 290 F.3d at p. 1051, fn. 6. Thus, the 2.17 multiplier here falls well-within the normal range. *Id.* What this means, for purposes of the lodestar cross-check, is that the award of a one-third fee here will not gut the individual recoveries of the Class Members in any way. To the contrary, even after fees and the other case costs are deducted from the total settlement amount, the *net individual recovery per wage statement* is exceptionally high at **$77.21**, which is **77.21%** of the $100 maximum recovery per paystub set by Labor Code section 226(e). (Hanson Decl. ISO Final Approval/Attorneys' Fees ¶ 31). This justifies the one-third fee request.

///

In summary, Class Counsel make an exceptionally strong showing on all six *Vizcaino* factors, thereby justifying the one-third fee request here. Critically, as discussed above, *Vizcaino* factor number one --- the "results achieved" --- is the most important factor in the Court's determination of the fee award. *Omnivision,* 559 F.Supp.2d at 1046; *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2019 WL 6327363 at *2; *Hensley v. Eckerhart*, 461 U.S. 424, 436; *In re Heritage Bond Litig.*, 2005 WL 1594389 at *8; *In re Capacitors Antitrust Litig.*, 2018 WL 4790575 at *3; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533 at *4. Thus, the one-third fee request can be justified here under *Vizcaino* factor number one alone because Class Counsel achieved exceptional results for the Class both on the monetary amounts and the changes United was forced to make to the format of the wage statements.

## IV.   LITIGATION COSTS

In a common fund case, Class Counsel are entitled to recover the reasonable expenses incurred in prosecuting the case. F.R.C.P. 23(h); *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2007). Here, the Settlement Agreement provides that Class Counsel may seek their litigation costs in an amount not to exceed $110,000. (See Settlement Agreement ¶ 18, attached as **Exhibit 1** to Hanson Decl. ISO Prelim. Approval).

As set forth in the Declaration of Class Counsel Jeffrey C. Jackson, Class Counsels' litigation costs to date total **$81,953.13**. (Jackson Decl. ISO Final Approval ¶ 7). This is well within the range of reasonableness for a case that has been heavily litigated for over eight (8) years. As such, the Court is respectfully asked to award costs to Class Counsel in the amount of **$81,953.13**.

## V.   PLAINTIFFS' REQUESTED SERVICE AWARDS ARE JUSTIFIED

Class representative service awards are typical in class action cases and are awarded based upon the following factors: (**1**) the risk of prosecuting the case (both financial and otherwise); (**2**) the negative notoriety associated with prosecuting a class

action; **(3)** the time spent working on the case; **(4)** the length of the litigation (*See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) [discussing factors one through four]; and **(5)** what percentage the service award amounts to out of the total settlement amount. *Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474 at * 6 (C.D. Cal. 2018) [e.g., a $7,500 service award that amounted to only 0.5% of the total settlement amount was within the appropriate range for approval].

The Settlement provides for service awards to the two named Plaintiffs in the amount of $20,000 for Plaintiff Ward and $10,000 for Plaintiff Richards. (**Exhibit 1 ¶** 19). The service awards should be approved because they satisfy the five factors courts consider when evaluating service awards.

### A.      The Risk To The Class Representatives

The financial risk the named Plaintiffs faced here to pay United's costs was real, significant, and *not a risk shared by any other Class Member*. Plaintiffs' litigation costs to date are $81,953.13. Therefore, United's costs would be in a similar range or higher.

As set forth in detail above in Section II and in Class Counsel Hanson's Declaration in support of final approval at paragraph 45, this case was a very risky endeavor for the named Plaintiffs from the start. In fact, the named Plaintiffs were liable for United's costs early on in this case when the Court granted summary judgment in favor of United on all claims. This risk continued as the case made its way through the appeals before the Ninth Circuit and the California Supreme Court, which appeals raised various issues of first impression for the Courts to decide. Finally, the risk continued in the district court on remand from the Ninth Circuit when the Court ruled on the second round of cross-motions for summary judgment that adjudicated multiple defenses on the merits that were not decided by the appeals. (Hanson Decl. ISO Final Approval/Attorney Fees ¶ 45).

It is important to point out that if United had been successful on even *one* of its numerous defensive arguments, then Plaintiffs' case would have failed and *only the named Plaintiffs would have been on the hook for United's costs*. Indeed, no other pilots assumed this risk for the benefit of the Class. If Plaintiffs Ward and Richards had lost this

case, they would have been solely responsible to pay United's costs, as Class Counsel did not agree to pay United's costs for Ward and Richards in the event of a loss. (Ward Decl. ISO Final Approval ¶ 6; Richards Decl. ISO Final Approval ¶ 6). Moreover, if Plaintiffs Ward and Richards had become liable to pay United's costs in the event of a loss, it would have been financially devasting for them. (Ward Decl. ISO Final Approval ¶ 8; Richards Decl. ISO Final Approval ¶ 7).

**B**.   **Negative Notoriety**

A person's status as a class representative is not viewed as a positive thing by any current or future employer, and is easily uncovered by the most basic employment background check. Moreover, as in this case, where the names of the Plaintiffs are forever enshrined in published Ninth Circuit and California Supreme Court decisions, Plaintiffs, and their role in this case, cannot be hidden from employers or anyone else. None of the other Class Members face this problem. It is unique to the named Plaintiffs in this action. (Ward Decl. ISO Final Approval/Attorney Fees ¶ 9;Richards Decl. ISO Final Approval/Attorney Fees ¶ 8; Hanson Decl. ISO Final Approval/Attorney Fees ¶ 46).

**C.**   **The Time And Effort Devoted To This Case By Plaintiffs**

Plaintiffs Ward and Richards have devoted a great deal of time to the prosecution of this case, including but not limited to, communicating with Class Counsel on a regular basis to stay informed on the status of the case, always assisting counsel upon request, providing numerous payroll documents and explaining same, attending mediations, and participating in case decisions, among other work. (Ward Decl. ISO Final Approval/Attorney Fees ¶¶ 10-12; Richards Decl. ISO Final Approval/Attorney Fees ¶¶ 9-11; Hanson Decl. ISO Final Approval ¶ 47). Plaintiff Ward estimates that he has spent 175 hours working on this case. (Ward Decl. ISO Final Approval/Attorney Fees ¶ 12). Plaintiff Richards estimates that he has spent 80 hours working on this case. (Richards Decl. ISO Final Approval/Attorney Fees ¶ 11).

Plaintiffs Ward and Richards have been an invaluable asset to Class Counsel in the prosecution of this case, and agreed to continue with the prosecution of this case over

many years despite major setbacks that could only be fixed on appeal, and despite the ongoing risk to themselves of having to pay for United's costs in the event Plaintiffs lost this case on any one of the numerous defenses raised by United. (Hanson Decl. ISO Final Approval/Attorney Fees ⁋ 47).

### D.   The Duration Of The Litigation

The work on this case started in January of 2015, and the case is ongoing. As such, the litigation in this case has been going for over eight (8) years, and has been a risky battle for Plaintiffs all the way up through the settlement negotiations. (Hanson Decl. ISO Final Approval/Attorney Fees ⁋ 48).

### E.   The Service Awards Are Reasonable When Compared To
### The Gross Settlement Amount

The $20,000 service award requested for Charlie Ward is only 0.19% of the total $10,270,064.00 GSV. The $10,000 service award requested for Bruce Richards is only 0.09% of the total $10,270,064.00 GSV. Moreover, when the service awards are combined (e.g., $30,000.00), they are only **0.29%** of the total $10,270,064.00 GSV. (Hanson Decl. ISO Final Approval/Attorney Fees ⁋ 49). These percentages are well-within the ranges of service awards awarded in other cases. *See Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474, at *6 (C.D. Cal. 2018) [e.g., a $7,500 service award that amounted to only **0.5%** of the total settlement amount was within the appropriate range for approval]; *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, at *10 (C.D. Cal. 2019); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *11 (C.D. Cal. 2017).

For the forgoing reasons, Plaintiffs submit that the requested service awards are reasonable and justified, and therefore, respectfully request that this Court award service awards in the amounts requested.

///

## VI.    CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that this Court award attorney's fees, litigation costs, and service awards in the requested amounts.

Dated: October 24, 2023                    Respectfully submitted,

                                           JACKSON HANSON LLP

                                           /s/ *Kirk D. Hanson*
                                           Kirk D. Hanson
                                           Attorneys for Plaintiffs, the Aggrieved
                                           Employees, and the Class Members