UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES E. WARD, et al.,

    Plaintiffs,

v.

UNITED AIRLINES, INC.,

    Defendant.

No. C 15-02309 WHA

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT (2) GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS, AND (3) DENYING DEFENDANT'S MOTION TO APPROVE CONSENT DECREE**

### INTRODUCTION

In this certified class action involving alleged deficiencies on pay stubs for airline pilots, plaintiff moves for final approval of a class settlement. Because the settlement is fair, reasonable, and adequate, final approval is **GRANTED**.

Plaintiff separately moves for an award of attorney's fees in the amount of one-third of the gross common fund, costs in the amount of $81,953.13, and a class representative service award in the amount of $20,000 (for plaintiff Ward) and $10,000 (for plaintiff Richards). This order finds that counsel is entitled to attorney's fees of 28% and costs in the amount requested. The class representatives are entitled to service awards of $500 (for plaintiff Ward) and $250 (for

plaintiff Richards). To the extent stated herein, the motion for attorney's fees, costs, and class representative service awards is **GRANTED**.

Defendant moves for approval of an unopposed consent decree concerning defendant's revisions to pilot wage statements. For the reasons stated below, defendant's motion is **DENIED**.

## STATEMENT

A previous order recites the facts herein (Dkt. No. 78 at 1–27). This class action, first filed in California state court in April 2015, was promptly removed pursuant to the Class Action Fairness Act. At all relevant times, plaintiff Charles E. Ward was employed by United Airlines in San Francisco, California. Plaintiff Bruce Richards, also a California-based pilot, was added as a named plaintiff in October 2021. Defendant United is a major American airline operating a network of domestic and international flights across the country, California included. Plaintiffs' initial complaint alleged that United failed to include its physical address, hours worked, and applicable hourly rates on the wage statements of California-based pilots, in violation of California Labor Code Section 226(a). Plaintiffs sought PAGA civil penalties, statutory damages pursuant to Labor Code Section 226(e), and injunctive relief on behalf of themselves and a putative class of "[a]ll persons who were or are employed by [United] in California as pilots at any time from one year before the filing of the Complaint up to present" (Dkt. No. 1 Exh. A at 5). A March 2016 order certified the following class under Rule 23(b)(2) and (3):

> All persons who are or were employed by United Airlines, Inc., as pilots for whom United applied California income tax laws pursuant to 49 U.S.C. 40116(f)(2) at any time from April 3, 2014, up to April 3, 2015

(Dkt. No. 44 at 14). After the parties filed cross-motions for summary judgment, a July 2016 order granted summary judgment for United, holding that Section 226 applies only to employees who work "principally" in California, and that the application of Section 226 to United's pilots would violate the dormant Commerce Clause (Dkt. No. 78). Plaintiff appealed. Our court of appeals certified the Section 226 question to California's Supreme Court and subsequently reversed summary judgment and remanded. *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). Consistent with our court of appeals' mandate, the class was redefined to include:

2

> All pilots employed by United Airlines, Inc., at any time between April 3, 2014, up to the time of the final judgment (the Covered Time Period), who have or had a designated home-base airport in California at any time during the Covered Time Period, and who, at any time during the Covered Time Period, either worked the majority of their time in California or did not work the majority of their time in any one state.

(Dkt. No. 97). An August 2022 order granted summary judgment for plaintiffs' Sections 226(a)(2) and (a)(9) claims and granted defendant's motion on the Labor Code Section 226(a)(8) claim. (Dkt. No. 127). That ruling had the effect of altering the start of the class period from April 2014 to February 2021.

The parties entered mediation shortly after the second summary judgment order, and, in January 2023, reached an initial settlement agreement (Dkt. No. 129). The trial date was vacated, and plaintiff moved for, and later received, preliminary approval of a settlement (Dkt. No. 130 at 141). That agreement called for a $7,500,000 non-reversionary common fund for the benefit of some 1,929 class members (*id.* at 4-5). However, United discovered a dataset error during the preparation of the class settlement notice mailing (Dkt. No. 148 at 2). The class was expanded to include 4,207 class members, and the common fund accordingly expanded to a total $10,100,000.00 (Dkt. No. 153 at 2-3).

Defendant has already deposited the full amount into an interest-bearing account being managed by Rust Consulting, Inc., who has been engaged to administer the settlement. In light of this order's modifications, the math breaks down as follows. Litigation costs ($81,953.13), settlement administration costs ($50,876.70), and class representative service awards (totaling $750) are to be taken out of the fund, leaving $9,966,420.17. As explained below, attorney's fees will constitute 28% of this latter amount ($2,790,597.65). That leaves $7,175,822.52 for the class. Of that sum, $134,700.00 has been set aside as a PAGA penalty. The remainder – $7,041,122.52 and any accumulated interest – will be distributed to class members. The fund is non-reversionary, and any uncashed settlement checks will be transferred to this district's Unclaimed Funds Ledger.

3

Plaintiffs now move for final approval of the class settlement and, separately, for attorney's fees, costs, and class representative service awards (Dkt. Nos. 157 at 158). Defendant moves for the approval of a consent decree. This order follows full briefing and oral argument.

## ANALYSIS

### 1. MOTION FOR FINAL APPROVAL.

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982). A district court may grant approval of a settlement that will bind class members only after a hearing and only upon a finding that it is fair, reasonable, and adequate. FRCP 23(e).

The Rule 23(e)(2) analysis is guided by the eight *Churchill* factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Rule 23(e)(2) itself requires a district court to take up an additional set of factors. FRCP 23(e)(2)(A)–(D). To find that a settlement is fair, reasonable, and adequate, a district court must assess whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Other relevant factors that will be considered are those listed in the judge's notice of factors to be evaluated for any proposed class settlement (Dkt. No. 12, 133).

In short, in consideration for the dismissal of this action with prejudice and a release of claims related to Labor Code Section 226 wage statement formatting, defendant has provided a non-reversionary common fund totaling $10,100,000.00, from which class members will be paid on a *pro rata* basis. This order finds the settlement fit for final approval.

### A. THE *CHURCHILL* FACTORS.

The eight *Churchill* factors collectively support settlement.

*First*, this did not start as a strong case, as evidenced by defendant's initial victory on summary judgment. Since then, however, plaintiffs have successfully reversed summary judgment, prevailed on several appellate issues of first impression, and largely prevailed on a second round of cross-motions for summary judgment. As a result, plaintiffs now occupy a position of significant strength, and cite only the possibility that United will appeal plaintiffs' existing victories as a hurdle to a successful trial outcome (Br. 10). Nevertheless, the strength of plaintiffs' case is "balanced against the amount offered in the settlement." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (Judge Jacqueline Scott Corley). Here, the gross value recovered per wage statement under this settlement, $119.49, is slightly above the highest recovery allowed by statute per wage statement, $100.00. The net value recovered per wage statement, in light of this order's determination of attorney's fees, costs, and service awards below, stands at roughly $84. The amount offered is in line with the present strength of plaintiffs' case, and settlement carries the additional benefits of eliminating risks on appeal, avoiding the racking up of additional fees and costs to be taken out of a post-trial recovery, and expediting class members' receipt of that recovery. This factor favors approval of the settlement.

*Second,* the risk, expense, complexity, and likely duration of further litigation support settlement. This action has already made its way to our court of appeals and the California Supreme Court, and proceeding forward with a trial would likely result in further appeals and drag this issue on. Trial and additional appeals would rack up additional fees and costs beyond those already incurred, only reducing class members' recovery.

*Third*, the risk of maintaining class action status is largely theoretical, as acknowledged by plaintiffs (Br. 11).

*Fourth*, the amount offered supports settlement. As noted above, the settlement provides a total gross recovery more than the expected recovery had plaintiffs been successful at trial. This factor weighs heavily in favor of settlement.

*Fifth*, the extent of discovery and the stage of proceedings support settlement. The narrowed class and claims have survived class certification, appeal, and two rounds of summary judgment, and the parties have engaged in substantial discovery. The litigation is nearly a decade old, and parties have more than enough information to make an informed decision regarding the merits of the case.

*Sixth,* the experience and views of counsel support settlement. Counsel for both parties are sufficiently experienced in complex litigation and class actions generally, and employment and wage and hour disputes specifically. Plaintiffs' counsel acknowledges that the settlement reached is not just fair and reasonable, but indeed an excellent outcome (Br. 16-17). Defense counsel is silent, though the unopposed nature of the motions implies that they, too, consider the settlement reasonable.

*Seventh*, although there was not a governmental participant in this action, the California Labor and Workforce Development Agency has been served with the settlement agreement and addendum, plaintiffs' motions for preliminary and final approval and plaintiffs' motion for attorney's fees, costs, and service awards. The LWDA has not objected. This supports approval of the settlement.

*Eighth*, the reaction of the class members to the proposed settlement favors settlement. Of the 4,194 class members notified, only one has opted out, none have objected, and more than 99% of class members will be participating.

In sum, the *Churchill* factors support final approval of the settlement.

### B. THE RULE 23(e)(2) FACTORS.

Rule 23(e)(2), as amended in 2018, requires the district court to go beyond the *Churchill* factors. *See Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). In order to find that a settlement is fair, reasonable, and adequate, a district court must consider whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. This order evaluates these factors to the extent not considered in the *Churchill* analysis above.

6

*First*, class counsel and the class representatives have represented the class adequately. As noted above, the relief is similar to what could have been achieved had plaintiff been successful at trial.

*Second*, the settlement agreement is the product of arms-length negotiations conducted through JAMS mediator Michael Loeb.

*Third*, the relief is adequate, taking into account, as required:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, as modified by this order; and (iv) any agreement required to be identified under Rule 23(e)(3).

*Fourth*, the settlement treats class members equitably relative to each other.  Class members will be paid on a *pro rata* basis determined by the number of wage statements they received during the class period.  First, the total number of wage statements attributable to all class members during the class period will be divided into the net settlement value to determine a per wage statement amount.  That figure, multiplied by the number of wage statements any one class member received during the class period, will determine that individual's payment.

### C. THIS COURT'S FACTORS.

A prior order laid out fourteen factors that would be analyzed in the event of a proposed class settlement, some ow which overlap with factors already considered (Dkt. Nos. 12, 133). This order evaluates these factors to the extent relevant to the settlement at issue and not considered in the *Churchill* and Rule 23(e)(2) analyses above.

These, too, favor approval.   The settlement agreement does not contain an agreement as to attorney's fees or costs.  The class has not been impermissibly expanded to include irrelevant claims or persons.  The claim release is narrowly tailored, capturing only "the claims that were alleged and certified as class claims in the Lawsuit," and derivative claims "based on the factual allegations in the current or prior pleadings" (Dkt. No. 130-1 at 47).  The settlement also conforms to the "best approach" to claim procedure, calculating and cutting checks to

7

class members alongside a notice that cashing is deemed to be acceptance. The settlement fund is non-reversionary: unclaimed funds from uncashed settlement checks will be transferred to this district's Unclaimed Funds Ledger. Any class member who did not timely cash their settlement checks may then petition the court to obtain an order directing payment to him or her for a period of five years, after which unclaimed funds will be transferred to the U.S. Treasury.

In sum, these factors further support final approval. As such, for the foregoing reasons, final approval of the class settlement is hereby **GRANTED**.

### D.     PAGA SETTLEMENT.

A plaintiff who brings a PAGA claim "does so as the proxy or agent of the state's labor law enforcement agencies," and, as a result, "a judgment in an employee's action under the act binds not only that employee but also the state labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). "It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *Ibid*. "[I]n wage and hour class action cases that settle . . . very little of the total settlement is paid to PAGA penalties in order to maximize payments to class members." *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (Judge Lucy Koh), rev'd in part, vacated in part, 999 F.3d 668 (9th Cir. 2021); *see, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (Judge Jan Adler) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (Judge Elizabeth Laporte) (approving a PAGA settlement of 0.3 percent).

For the reasons stated above with respect to the class action settlement, the PAGA settlement is meaningful and consistent with the statute's purpose of benefitting the public. The PAGA penalty is also reasonable. The parties have agreed to a PAGA penalty of $134,700.00 - roughly 1.3% of the total settlement amount – to be taken out of the $10,100,000 total fund. Under California Labor Code Section 2699(i), 75% ($101,025.00) will be paid to

the LWDA, and 25% ($33,675.00) will be disbursed to the 7,484 Aggrieved Employees in equal amounts.

2. **MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS.**

A. *ATTORNEY'S FEES.*

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth* 654 F.3d at 942. This order follows the majority of courts in applying the percentage-of-recovery method. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("Although statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."). In our circuit, courts "calculate 25% of the fund as the 'benchmark' for a reasonable fee award," and consider upward or downward departures in light of any "special circumstances." *In re Bluetooth*, 654 F.3d at 942; *Arizona Citrus*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). The percentage figure, like a lodestar calculation, "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Our court of appeals has provided a number of factors that may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048–50. Counsel lays claim to a full third of the common fund. This order begins with the benchmark in our circuit, 25%, and addresses each circumstance that may justify a departure.

*First*, as discussed above, counsel has achieved an impressive result for the class, securing a $10,100,000 non-reversionary settlement. The total gross recovery comes out to a significant amount of the maximum possible recovery at trial, and the net recovery comes out to just under the maximum recovery set by Labor Code Section 225(e).

*Second*, there were real risks in this action, as evidenced by plaintiff's initial loss on summary judgment and various issues of first impression heard by our court of appeals and certified to the California Supreme Court. That being said, the benchmark award necessarily accounts for the risks inherent in the pursuit of any class action litigation and the myriad hurdles that inevitably materialize. The argument that each motion filed and issue argued is itself an extraordinary risk supporting an upwards departure is therefore granted little weight.

Further, counsel has found ways to put a thumb on the risk/reward scale, reducing the risks taken on. For example, under the named plaintiffs' retainer, counsel are "not responsible under the retainer agreement to pay any litigation costs assessed against me if United had won this lawsuit" (Richards Decl. 4; Dkt. No. 139 at 7, "If we had lost this case at any time, my client, Charlie Ward and Bruce Richards, they would be on the hook for United Airlines' cost. Nobody else."). Next, counsel has pursued this action alongside another in the Central District of California, which advances materially similar claims against the same defendant on behalf of a class of flight attendants. *Vidrio v. United Airlines, Inc.*, C.D. Cal. Case No. 2:15-cv-0798 (Judge Philip Gutierrez); *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1237 (9th Cir. 2021) ("These two consolidated cases were filed in different district courts but are founded on the same allegations."). The significant overlap in issues allows counsel to pursue a far greater potential recovery (and fee) through two separate class vehicles, all the while minimizing the investment of time, and money, necessary to pursue either individual action.

*Third*, as counsel notes, "the complexity of this case . . . is [] evident from the record in the district Court, the Ninth Circuit, and the California Supreme Court" (Br. 20). Multiple issues of first impression led to early losses for plaintiffs. The second round of summary judgment motions, while largely successful for plaintiff, also presented complex issues that ultimately changed the bounds of the class in significant ways.

*Fourth*, the contingent nature of the representation does not support a departure from the benchmark rate, which already recognizes that reality. This factor considers "the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work.)." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015). For example, in *Anthem*,

10

a compressed case schedule that required class counsel to forego work on other matters was found to support an upwards departure from the 25% benchmark. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *14 (N.D. Cal. Aug. 17, 2018) (Judge Lucy Koh). However, duration of litigation alone does not justify a departure. *Arizona Citrus*, 904 F.2d at 1311 (finding that "[n]othing in this case requires departure from the 25 percent standard award' where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues.").

Here, litigation has been ongoing for nearly a decade, and counsel report a total of 1684.1 hours billed over that span of time. While this litigation, like any, was subject to an ebb and flow, it was by no means a time-consuming endeavor. Counsel's first billing entry occurred on December 3, 2014. The total hours billed, between then and now, make out a rough average of 16 hours a month, or four hours a week. Indeed, counsel billed just 1.2 hours over the course of 2019 (Dkt. No. 157-1 8). Counsel's time was largely available to pursue other hourly and contingent work. Costs, while not insignificant, were likewise diffused over a significant time span, and do not constitute "special circumstances" in light of counsel's ability to pursue other work, their hourly rate, and significant contingency awards earned during this span (Br. 22-25).

*Fifth*, awards tend to adhere to our court of appeals' benchmark. Various empirical studies by authorities in the field have documented the mean percentage award in common fund cases over the span of two decades, and found that in our circuit, the mean award has fluctuated between 23.9% and 26%. *See* 5 Newberg and Rubenstein on Class Actions § 15:83 (6th ed.).

*Sixth*, the lodestar cross-check supports an upwards departure from the benchmark. Courts calculate a lodestar "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," and then adjusting upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors. *In re Bluetooth*, 654 F.3d at 941. Where, as here, the lodestar is employed to cross-check a percentage-of-fund determination, courts may do a rough

11

1   calculation. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act*
2   *(FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (Judge Margaret Morrow) ("In cases
3   where courts apply the percentage method to calculate fees, they should use a rough
4   calculation of the lodestar as a cross-check to assess the reasonableness of the percentage
5   award.").

6   Counsel's stated rate of $935/hour, while high, is just within the upper limit of rates
7   previously accepted in this district. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-
8   02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) (Judge Lucy Koh) (approving
9   partner rates from "about $490 to $975"); *In re Anthem*, 2018 WL 3960068, at *17 (approving
10  partner rates "from about $400 to $970"). While this order employs counsel's provided rate
11  for the limited purpose of a "rough" lodestar crosscheck, counsel has not submitted any billing
12  records supporting this rate, and this order does not endorse it uncritically.

13  The hours themselves must be limited to those "the prevailing party reasonably expended
14  on the litigation." *In re Bluetooth*, 654 F.3d at 941. The party seeking fees "bear[s] the burden
15  of showing the time spent and that it was reasonably necessary to the successful prosecution of
16  [the] claims." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th
17  Cir. 1989). If counsel fails to meet the mark, courts must excise any billed time that is
18  duplicative, excessive, or otherwise unnecessary. *Ibid*. As noted above, counsel, a two-partner
19  firm, have provided billing records that reflect a total of 1,684.1 hours. The time billed is
20  reasonable, with two important exceptions. *First*, "[f]ees are not awarded for fee litigation in
21  common fund cases because, rather than creating or preserving the common fund, the fee
22  litigation actually depletes it." *Kinney v. International Broth. of Elec. Workers*, 939 F.2d 690,
23  694 n.5 (9th Cir. 1991); *Pawlak v. Greenawalt*, 713 F.2d 972, 981 (3d Cir. 1983) ("Attorneys'
24  fees and costs are not awarded for time spent on the fee application in common fund cases
25  because the common fund or property is not benefited thereby."). The 13 hours billed for that
26  purpose are therefore discounted. *Second*, the 80 plus hours billed to the preparation of the
27  motion for final approval and supporting declarations is excessive because the motion and
28  declarations tread much of the same ground as (and at times borrows language from) the

12

1  motion for preliminary approval and supporting declarations, and because they re-hash
2  counsel's fees argument. After this further reduction, the total hours billed comes out to 1620.
3  Multiplied by the hourly rate above, the unadorned lodestar comes to $1,514,700, assuming
4  that every hour worked is billed at $935.

5      For the purposes of this attorney's fees calculation, the "total fund" constitutes the
6  amount settled for minus litigation costs, administration costs, and representative service
7  awards: $9,966,420.17. The one-third fee request ($3,321,807.84) amounts to a lodestar
8  multiplier of 2.2. This is a substantial upwards departure from the mean multiplier in common
9  fund cases in our circuit, which fluctuated between 1.26 and 1.54 in the years for which
10 authoritative empirical studies are available. 5 Newberg and Rubenstein on Class Actions §
11 15:89 (6th ed.).

12     In light of the above, and with special attention to the strong result achieved for the class,
13 an upward deviation from the benchmark percentage is justified. Counsel is granted a fee of
14 28%, or $2,790,597.65. This results in a lodestar multiplier of 1.8, which is well above the
15 mean multiplier in our circuit, and reflects the strong results achieved by counsel.

16     *Finally*, the agreed-upon fund has been deposited in an interest-bearing account, and its
17 value has grown. Counsel's briefing employs an estimated total value of the fund, with
18 interest, at the time of disbursement in mid-February. This order does not employ this moving,
19 and in any case uncertain, estimate (Suppl. Pikus Decl. 4, "Please not that this is just an
20 estimate as the yields on the account fluctuate."). Counsel is entitled to 28% of the amount
21 settled for, minus litigation costs, settlement administration costs, and class representative
22 service awards: $2,790,597.65.

23     **B.**    **COSTS.**

24     "There is no doubt that an attorney who has created a common fund for the benefit of the
25 class is entitled to reimbursement of reasonable litigation expenses from that fund. To that
26 end, courts throughout the Ninth Circuit regularly award litigation costs and expenses –
27 including reasonable travel expenses – in wage-and-hour class actions." *Bellinghausen v.*
28 *Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (Judge Jacqueline Scott Corley)

13

1  (internal quotations and citations omitted).  Counsel has submitted a list of itemized costs

2  totaling $81,953.13, including costs for travel, mediation, notice processing and mailing,

3  appellate attorney's fees, postage, and court filing fees.  These are reasonable litigation

4  expenses incurred for the benefit of the class, and reasonably proportionate to the nature of the

5  litigation, benefits obtained, and attorney's fees granted.  Counsel's request for reimbursement

6  of litigation costs of $81,953.13 is **GRANTED**.

### C. CLASS REPRESENTATIVE SERVICE AWARDS.

As to class representative service awards, counsel requests $20,000 for plaintiff Ward and $10,000 for plaintiff Richards (Br. 27).  These excessive awards threaten the integrity of the settlement.  At this stage of a class action settlement, it falls to the courts to "guard against an unreasonable result."  *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023).  A key data point in that effort is the reaction of the class to the settlement.  *Belevich v. Bank of Am. Nat'l Ass'n*, No. CV159171PSGJPRX, 2017 WL 11630874, at *5 (C.D. Cal. Dec. 4, 2017) (Judge Philip Gutierrez) ("In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement").  Indeed, both named plaintiffs express strong support for the settlement through their declarations, and courts often rely on such statements.  However, excessive individual awards such as these raise a fundamental question:  is the named plaintiff satisfied with the benefit achieved *for the class*, or with the personal benefit bestowed onto her alone?  If it is the former, a named plaintiff should be satisfied with receiving just that alongside every other member of the class.  The latter, meanwhile, would suggest collusion with counsel against the interest of the average class member.

In defense of the awards sought, counsel cites the hours worked, and risks taken on, by named plaintiffs.  First, plaintiff Ward estimates that he spent "in the range of 175 total hours or even a little more than that" working on the case (Ward Decl. 9).  However, counsel's billing records capture client conversations, emails to client, depositions, hearings, and mediations.  They do not bear out that figure.  Second, plaintiffs suggest that they face generalized potential stigmas, but do not substantiate those claims.  They are accordingly

14

granted little weight. *Wilson v. Tesla, Inc.*, 833 F. App'x 59, 62 (9th Cir. 2020) (quoting *Clark v. Am. Residential Servs. LLC*, 96 Cal. Rptr. 3d 441, 457 (Cal. Ct. App. 2009)) ("The trial court is not bound to, and should not, accept conclusory statements about 'potential stigma' . . . in the absence of supporting evidence.").

Considering the relevant risks of prosecution, potential for negative notoriety, time spent working, and length of litigation, plaintiff Ward is awarded $500, while plaintiff Richards is awarded $250.

### 3. DEFENDANT'S MOTION TO APPROVE CONSENT DECREE

"A consent decree is essentially a settlement agreement subject to continued judicial policing. It is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990) (internal quotations and citations omitted). "Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable." *Id.* at 581. Courts must "evaluate both the procedural and substantive fairness of the consent decree." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal. 2011) (Judge Susan Illston). As to procedural fairness, a decree reached through "good faith, arms-length negotiations" is "presumptively valid." *Oregon*, 913 F.2d at 581. With respect to substantive fairness, "[t]he court need only be satisfied that the decree represents a reasonable factual and legal determination." *Ibid.* (internal quotations omitted). This "approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Ibid.* (internal quotations omitted).

As an initial matter, the pilot wage statements submitted by United via declaration appear to conform with the plain language of Sections 226(a)(2) and 226(a)(9). United's prior pilot wage statements were found to violate Sections 226(a)(2) and 226(a)(9) because the hours worked and corresponding hourly rates were omitted from pay advices (Dkt. No. 127, 7, 9). The consent decree requires use of a revised form that sets out total hours worked, applicable effective hourly rates, and the number of hours worked at each rate (Salazar Decl. Exh. A-C). Where a pilot is paid based on LPV, the pay register includes a summary of flights,

15

"actual hours worked" and the "effective rate" for each flight (*id.* Exh. A). Pilots paid based on MPG or PTC are provided the single applicable effective hourly rate, alongside total hours, in the pay register (*id.* Exh. B, C).

However, the consent decree itself is fatally overbroad, purporting to constitute a complete defense against too broad a group of potential litigants, for too long a period of time. On those grounds, the decree is found to be substantively deficient, and is **DENIED.**

## CONCLUSION

Accordingly, it is hereby ordered as follows:

1. The settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants, that it is the product of good faith, arms-length negotiations between the parties, and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. Final approval of the class settlement is therefore **GRANTED**.

2. This order hereby awards plaintiffs' counsel attorney's fees of $2,790,597.65 and $81,953.13 in litigation costs and expenses, to be paid from the settlement fund. Plaintiffs' counsel shall be awarded the $81,953.13 as well as 50 percent of the attorney's fees now; the remaining 50 percent may be recovered only after counsel certifies that the fund is completely wound up. If problems do arise, and if management of this fund so necessitates, any shortfall in funds to pay class members may be deducted from the unpaid attorney's fees.

3. Named plaintiff Charles E. Ward is awarded a class representative service award of $500. Named plaintiff Bruce Richards is awarded a class representative service award of $250. Both are to be paid from the settlement fund.

4. The Court retains continuing jurisdiction over the class action, named plaintiffs, the class, and defendant for four years from the date of entry of this order in order to supervise the implementation, enforcement, construction and interpretation of the revised settlement agreement and this order.

5. Defendant's motion for a consent decree is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 24, 2024

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE